*UNITED STATES DISTRICT COURT*
*DISTRICT OF MAINE*

*JOSEPH T. ZIEHM,*                        )
                                          )
              *Plaintiff*                 )
                                          )
*v.*                                      )        *Civil No. 09-69-P-S*
                                          )
*RADIOSHACK CORPORATION,*                 )
                                          )
              *Defendant*                 )


*MEMORANDUM DECISION ON MOTION TO STRIKE AND*
*RECOMMENDED DECISION ON MOTION FOR SUMMARY JUDGMENT*


Defendant RadioShack Corporation ("RadioShack") seeks summary judgment as to all claims against it in this disability discrimination action brought by its former employee, plaintiff Joseph T. Ziehm, pursuant to the Maine Human Rights Act ("MHRA"), 5 M.R.S.A. § 4551 *et seq.*, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.  See* Defendant RadioShack Corporation's Motion for Summary Judgment ("Defendant's S/J Motion") (Docket No. 36) at 1.  RadioShack also moves to strike substantial portions of an affidavit of the plaintiff submitted in support of his opposition to its motion for summary judgment.  *See* Affidavit of Joseph T. Ziehm ("Ziehm Aff.") (Docket No. 47); Defendant RadioShack Corporation's Motion To Strike Plaintiff Joseph T. Ziehm's Affidavit ("Motion To Strike") (Docket No. 62) at 1.[1]  For the reasons that follow, I grant in part and deny in part the defendant's motion to strike and recommend that the court grant its motion for summary judgment.

---

[1] Local Rule 56(e) generally forbids the filing of motions to strike in the context of summary judgment motions.  *See* Loc. R. 56(e).  However, in this instance, I granted a motion by the defendant for leave to file such a motion because it would serve to avoid repetitive, individual arguments as to each of the numerous paragraphs in the parties' statements of material facts citing to the affidavit at issue.  *See* Docket Nos. 54, 58.

## I.  Applicable Legal Standards

### A.  Federal Rule of Civil Procedure 56

Summary judgment is appropriate only if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Santoni v. Potter*, 369 F.3d 594, 598 (1st Cir. 2004).  "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party."  *Rodríguez-Rivera v. Federico Trilla Reg'l Hosp. of Carolina*, 532 F.3d 28, 30 (1st Cir. 2008) (quoting *Thompson v. Coca-Cola Co.*, 522 F.3d 168, 175 (1st Cir. 2008)). "A fact is material if it has the potential of determining the outcome of the litigation."  *Id.* (quoting *Maymi v. P.R. Ports Auth.*, 515 F.3d 20, 25 (1st Cir. 2008)).

The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  In determining whether this burden is met, the court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor.  *Santoni,* 369 F.3d at 598.  Once the moving party has made a preliminary showing that no genuine issue of material fact exists, the nonmovant must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue."  *Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999) (citation and internal punctuation omitted); Fed. R. Civ. P. 56(e).  "As to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment to the moving party."  *In re Spigel*, 260 F.3d 27, 31 (1st Cir. 2001) (citation and internal punctuation omitted).

## B.  Local Rule 56

The evidence that the court may consider in deciding whether genuine issues of material fact exist for purposes of summary judgment is circumscribed by the local rules of this district. *See* Loc. R. 56.  The moving party must first file a statement of material facts that it claims are not in dispute.  *See* Loc. R. 56(b).  Each fact must be set forth in a numbered paragraph and supported by a specific record citation.  *See id*.  The nonmoving party must then submit a responsive "separate, short, and concise" statement of material facts in which it must "admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts[.]"  Loc. R. 56(c).  The nonmovant likewise must support each denial or qualification with an appropriate record citation.  *See id*.  The nonmoving party may also submit its own additional statement of material facts that it contends are not in dispute, each supported by a specific record citation.  *See id*.  The movant then must respond to the nonmoving party's statement of additional facts, if any, by way of a reply statement of material facts in which it must "admit, deny or qualify such additional facts by reference to the numbered paragraphs" of the nonmovant's statement.  *See* Loc. R. 56(d).  Again, each denial or qualification must be supported by an appropriate record citation.  *See id*.

Failure to comply with Local Rule 56 can result in serious consequences.  "Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted."  Loc. R. 56(f).  In addition, "[t]he court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment" and has "no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of fact."  *Id*.; *see also, e.g., Sánchez-Figueroa v. Banco Popular de P.R.*, 527 F.3d 209,

213-14 (1st Cir. 2008).

## II.  Factual Background

### A.  Motion To Strike

The defendant seeks to strike all or portions of 41 of the 51 paragraphs of the plaintiff's affidavit on one or more of the following bases: they (i) are not based on personal knowledge, (ii) violate hearsay rules, (iii) contain legal conclusions or speculative assertions, (iv) set forth new allegations that should have been disclosed during the course of discovery, and (v) directly contradict the plaintiff's prior sworn deposition testimony.  *See* Motion To Strike at 1.

With respect to the fifth point, the First Circuit has held that "where a witness gives a clear and unambiguous answer, he may not defeat summary judgment with a contradictory affidavit unless he gives a satisfactory explanation of why the testimony has changed."  *Thore v. Howe*, 466 F.3d 173, 186 n.7 (1st Cir. 2006) (citing *Colantuoni v. Alfred Calcagni & Sons, Inc.*, 44 F.3d 1, 4-5 (1st Cir. 1994)).

The plaintiff generally denies that inconsistencies between his deposition testimony and his affidavit are the sort of contradictions identified in *Colantuoni*.  *See* Plaintiff, Joseph T. Ziehm's, Response to RadioShack's Motion To Strike Plaintiff's Affidavit ("Strike Response") (Docket No. 74) at 1-3.  However, he argues that if the court finds such contradictions, they are generally explained by "the unique and substantial intercommunicative difficulties of the Plaintiff, who has Asperger's Syndrome, and the rigors of a lengthy deposition with many difficult and ambiguous questions soliciting difficult to remember and psychologically taxing points of recall."  *Id*. at 3.  He elaborates that (i) his deposition ran from 9:50 a.m. to 7:36 p.m., (ii) he did not have the benefit of review of his original notebook during the deposition, and there is no indication he reviewed any other documents in preparation for it, and (iii) his Asperger's

Syndrome causes anxiety, adversely affects his ability to be fully aware of conversations, and causes him to misperceive situations, particularly during stressful encounters such as the taking of a deposition. *See id.* He points out that his expert, Peter Bridgman, M.D., thought it prudent to avoid discussing his employment history with him because Dr. Bridgman was aware of the severe anxiety that topic would cause him. *See id.* at 3-4; Deposition of Peter A. Bridgman, M.D. ("Bridgman Dep.") (Docket No. 65-1), Exh. 1 to Defendant's Reply to Plaintiff's Statement of Additional Material Facts ("Defendant's Reply SMF") (Docket No. 65), at 34.

The defendant rejoins, and I agree, that, in the circumstances, this does not constitute a "satisfactory explanation" for any contradictions. *See* Reply to Plaintiff's Opposition to Defendant RadioShack Corporation's Motion To Strike Plaintiff's Affidavit ("Strike Reply") (Docket No. 80) at 2-4. This is so because:

1.     The plaintiff offers no medical support for his conclusion that Asperger's Syndrome interfered with his ability to understand or respond truthfully to the questions asked of him during his deposition. *See, e.g.*, Bridgman Dep. at 59-62. He is not qualified as a layperson to provide such an opinion. *See, e.g., Hrichak v. Pion*, 498 F. Supp.2d 380, 382 (D. Me. 2007) ("A lay witness is not competent to offer a self-diagnosis of the cause or nature of his impairment[.]").

2.     The plaintiff, who was represented by counsel, had a lunch break and 12 other breaks during his deposition. *See* Deposition of Joseph T. Ziehm ("Ziehm Dep.") (Docket Nos. 83-1 to 83-4), attached to Defendant's Statement of Material Facts ("Defendant's SMF") (Docket No. 83), at 27, 47, 68-69, 105, 114, 127, 149, 158, 164, 171, 176, 194. He testified that he understood all of the questions asked and had requested clarification when necessary. *See id.* at 175-76.

5

3.      During the plaintiff's deposition, he read his notebook into the record.  *See id.* at 122-41.  To the extent that he omitted to review documents in preparation for his deposition, his failure to do so does not constitute an adequate excuse for any contradictions between his deposition testimony and his subsequent affidavit.  *See, e.g., Orta-Castro v. Merck, Sharp & Dohme Química P.R., Inc.*, 447 F.3d 105, 110 (1st Cir. 2006) (district court supportably found deponent's explanation for contradictions between statement and deposition testimony, that she had memory troubles during deposition and later reviewed documents that refreshed her memory, unsatisfactory when statement was executed only in response to summary judgment motion and plaintiff's attorneys did not suggest, during deposition, that she was having memory problems).

4.      He offers this explanation for the first time in opposition to the plaintiff's motion to strike.  This timing counsels in favor of resolving any doubts against its validity.  *See, e.g., id.*[2]

With respect to the individual paragraphs challenged, the Motion To Strike is **GRANTED** in part and **DENIED** in part as follows:

Paragraph 2: **GRANTED**.   This statement contradicts the plaintiff's deposition testimony, *compare* Ziehm Aff. ¶ 2 *with* Ziehm Dep. at 39, and he provides no satisfactory explanation for the change, *see* Strike Response ¶ 2; *Thore*, 466 F.3d at 186 n.7.

Paragraph 3, second sentence: **GRANTED**.   This statement contradicts the plaintiff's deposition testimony, *compare* Ziehm Aff. ¶ 3 *with* Ziehm Dep. at 71, and he provides no satisfactory explanation for the change, *see* Strike Response ¶ 3; *Thore*, 466 F.3d at 186 n.7.

Paragraph 4: **GRANTED**.       This statement contradicts the plaintiff's deposition

---

[2] The plaintiff goes so far as to suggest that the court will come "perilously close to repeating in the judicial system the discriminatory treatment Ziehm alleges to have occurred in his employment at RadioShack" if it disregards portions of his affidavit that he alleges are inconsistent because of difficulties caused by his Asperger's Syndrome. *See* Strike Response at 4.  This anticipatory strike is unhelpful and unfortunate.

testimony, *compare* Ziehm Aff. ¶ 4 *with* Ziehm Dep. at 98-99, and he provides no satisfactory explanation for the change, *see* Strike Response ¶ 4; *Thore*, 466 F.3d at 186 n.7.  The plaintiff's argument notwithstanding, *see* Strike Response ¶ 4, the deposition transcript does not demonstrate "great confusion" in answering the relevant questions, in which he agreed that he never returned to work after July 17, 2007, and that he voluntarily resigned, *see* Ziehm Dep. at 99.[3]

Paragraph 5: **DENIED**.  The statement is not speculative and rests on an adequate foundation.  The plaintiff states that he did not know how to submit mileage requests because his manager, Kasey Moore, did not tell him how to do so.  *See* Ziehm Aff. ¶ 5.  To the extent that the defendant argues that the plaintiff was mistaken in his belief that Moore was responsible for informing him about the mileage policy, *see* Motion To Strike ¶ 5, its argument goes to the weight, rather than the admissibility, of the statement.  There is no contradiction between the statement and the plaintiff's testimony that he signed a copy of a RadioShack policy that directed him to policies on mileage reimbursement.

Paragraph 6: **GRANTED**.  The plaintiff fails to demonstrate that he has any personal knowledge of Moore's motivations for allegedly altering the plaintiff's sales commissions.  *See*

---

[3] As the defendant argues, *see* Strike Reply ¶ 4, the cases that the plaintiff cites for the proposition that a "yes" or "no" answer to a broad question from opposing counsel cannot be seen as an unambiguous response to a clear question, *see* Strike Response ¶ 4, are distinguishable.  Two of those cases, *Chaloult v. Interstate Brands Corp*., No. 02-249-P-C, 2003 WL 21803319 (D. Me. Aug. 6, 2003) (rec. dec., *aff'd* Sept. 10, 2003), and *Hinkley v. Baker*, 122 F. Supp.2d 57 (D. Me. 2000), did not involve the sort of pointed questions at issue here, but rather questions of varying degrees of breadth.  In *Chaloult*, the court held that a negative answer to the broad question, "Is there anything else about your claim that you feel is important that we haven't addressed today?," did not foreclose the deponent from identifying additional incidents consistent with the allegations made in his complaint.  *See Chaloult*, 2003 WL 21803319, at *3.  In *Hinkley*, the court held that an affirmative answer to the more specific, but still broad, question, "you have told everybody everything you can remember that Mr. Baker did that you felt to be bad or offensive[?]," did not foreclose the deponent from elaborating on the details surrounding conduct alleged in her complaint when "she ha[d] not brought up any additional incidents or events").  *See Hinkley*, 122 F. Supp.2d at 59 n.1.  In *Capozza Tile Co. v. Joy*, 223 F. Supp.2d 307 (D. Me. 2002), the court held that a "yes" response, to a question whether the deponent signed a "union contract" because of the consequences if he did not sign, could not be deemed an admission that he knowingly signed a collective bargaining agreement covering all of his employees.  *See Joy*, 223 F. Supp.2d at 317 n.4.  Here, there was no such ambiguity.

*Livick v. Gillette Co.*, 524 F.3d 24, 28 (1st Cir. 2008) ("Under Rule 56(e), an affidavit at the summary judgment stage must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated. This requisite personal knowledge must concern facts as opposed to conclusions, assumptions, or surmise.") (citations and internal quotation marks omitted); *Ahmed v. Berkshire Med. Ctr., Inc.*, No. 98-1496, 1999 WL 1319005, at *1 (1st Cir. Oct. 5, 1999) (no error in district court's holding that portions of summary judgment affidavit failed to satisfy the standards of personal knowledge, admissibility, and competence required by Federal Rule of Civil Procedure 56(e); observing, "The object of Rule 56(e) is not to replace conclusory allegations of the complaint with conclusory allegations of an affidavit.") (citations and internal punctuation omitted).[4] Moreover, the statement that Moore "targeted [the plaintiff] to exploit because he believed [him] to be an easy target for bullying and intimidation because of [his] Asperger's Syndrome[,]" Ziehm Aff. ¶ 6, is in the nature of an argument rather than a "fact." *See García v. Bristol-Myers Squibb Co.*, 535 F.3d 23, 33 n.5 (1st Cir. 2008) ("A court is not obliged to accept as true or to deem as a disputed material fact each and every unsupported, subjective, conclusory, or imaginative statement made to the Court by a party.") (citation and internal punctuation omitted); *Learnard v. Town of Van Buren*, 182 F. Supp.2d 115, 120 & n.4 (D. Me. 2002) (listing, as an example of a statement that is not a "fact": "Richard Daigle has always been out to get Learnard.") (citation and internal quotation marks omitted).

    Paragraph 7: **GRANTED**.   The plaintiff fails to demonstrate that he has any personal knowledge of Moore's motivations for offering and then retracting management training. *See*

---

[4] The plaintiff points to his review, subsequent to his deposition, of sales commission reports, as well as to unspecified statements and treatment of himself by Moore, as supplying the requisite personal knowledge. *See* Strike Response ¶ 6. While that sort of information may form the basis for informed speculation, it does not supply personal knowledge.

*Livick*, 524 F.3d at 28; *Ahmed*, 1999 WL 1319005, at *1.[5]  Moreover, the statement that Moore's retraction of the training "was a trick or joke on [the plaintiff] because of [his] Asperger's Syndrome[,]" Ziehm Aff. ¶ 7, is in the nature of an argument rather than a "fact." *See, e.g., García*, 535 F.3d at 33 n.5; *Learnard*, 182 F. Supp.2d at 120 & n.4.  Finally, the statement contradicts the plaintiff's deposition testimony, *compare* Ziehm Aff. ¶ 7 *with* Ziehm Dep. at 108-09, and he provides no satisfactory explanation for the change, *see* Strike Response ¶ 7; *Thore*, 466 F.3d at 186 n.7.[6]

Paragraph 9: **GRANTED**.  The plaintiff fails to demonstrate that he has any personal knowledge that Moore was discriminating against him based on his Asperger's Syndrome or exploiting the symptoms of his condition to take advantage of him.  *See Livick*, 524 F.3d at 28; *Ahmed*, 1999 WL 1319005, at *1.[7]  Moreover, these statements are in the nature of an argument rather than a "fact." *See, e.g., García*, 535 F.3d at 33 n.5; *Learnard*, 182 F. Supp.2d at 120 & n.4.

Paragraph 11, assertions regarding harassment and stress: **DENIED**.  The plaintiff's statement that he did not seek a reasonable accommodation prior to July 17, 2007, "despite the harassment at RadioShack and the stress the harassment caused [him]," Ziehm Aff. ¶ 11, is permissible lay opinion testimony pursuant to Rule 701 because rationally based on his

---

[5] The plaintiff asserts that his statement is permissible lay opinion pursuant to Federal Rule of Evidence 701.  *See* Strike Response ¶ 7.  However, a Rule 701 opinion must be "rationally based on the perception of the witness," Fed. R. Evid. 701, a limitation that incorporates "the familiar requirement of first-hand knowledge or observation[,]" *id.* advisory committee's note.  In the absence of an evidentiary foundation for an inference of discriminatory animus, the plaintiff's opinion is properly excluded.  *See Alexis v. McDonald's Rests. of Mass., Inc.*, 67 F.3d 341, 347 (1st Cir. 1995).

[6] As is the case with respect to paragraph 4 of the Ziehm Affidavit, the plaintiff's reliance on *Chaloult*, *Hinkley*, and *Joy* to illustrate the asserted lack of contradiction between his deposition testimony and his affidavit is unavailing.  In this instance, as well, the plaintiff gave "yes" or "no" answers to pointed, unambiguous questions.  *See* Ziehm Dep. at 108-09.

[7] The plaintiff asserts that his statement is permissible lay opinion pursuant to Federal Rule of Evidence 701.  *See* Strike Response ¶ 9.  However, in the absence of an evidentiary foundation for an inference of discriminatory animus, his opinion is properly excluded.  *See Alexis*, 67 F.3d at 347.

perceptions.  He did testify at deposition that he experienced some instances of harassment.  *See, e.g.*, Ziehm Dep. at 73-74.  While a layperson is not competent to diagnose the cause of his symptoms, *see, e.g., Hrichak*, 498 F. Supp.2d at 382, it is within the realm of ordinary experience, and thus need not be established by expert testimony, that harassment can cause stress, *see, e.g., Ankuda v. R.N. Fish & Son, Inc*., 535 F. Supp.2d 170, 174 (D. Me. 2008) ("Expert testimony does not assist where the [trier of fact] has no need for an opinion because it easily can be derived from common sense, common experience, the [trier of fact's] own perceptions, or simple logic.") (citation and internal quotation marks omitted); *EEOC v. Vail Corp*., Civil Action No. 07-cv-02035-REB-KLM, 2008 WL 4489256, at *6 (D. Colo. Oct. 2, 2008) (plaintiffs were competent to testify as to emotional distress so long as they did "not intend to introduce evidence of emotional distress over and above what a reasonable person could suffer after being wrongfully terminated, e.g., mental anguish, humiliation, loss of confidence, etc.").[8]

    Paragraph 12: **GRANTED** as to the word "discriminatory," which states a legal conclusion, *see, e.g., García*, 535 F.3d at 33 n.5; *Learnard*, 182 F. Supp.2d at 120 & n.4, and as to the assertion that Moore "singled [the plaintiff] out for such treatment on the basis of [his] Asperger's Syndrome[,]" Ziehm Aff. ¶ 12, the plaintiff having demonstrated no personal knowledge of Moore's motivation or evidentiary foundation for his belief, *see Livick*, 524 F.3d at 28; *Alexis*, 67 F.3d at 347.  Otherwise **DENIED**.  The balance of the sentence can be discerned to be rationally based on the plaintiff's perception as required by Rule 701.  If, as the defendant

---

[8] To the extent that the plaintiff alleges that he was subjected to "harassment," Ziehm Aff. ¶ 11, I construe the word in the sense used by laypersons rather than as stating the legal conclusion that Moore harassed the plaintiff based on an alleged disability.

suggests, the opinion is in one or more respects unsupported by the underlying evidentiary record, *see* Strike Reply ¶ 12, that goes to its weight rather than its admissibility.[9]

<u>Paragraph 13</u>: **GRANTED**.  The plaintiff did not disclose the allegation that on several occasions, Moore called him a "retard," Ziehm Aff. ¶ 13, despite being asked questions at his deposition that clearly asked for such information, *see* Ziehm Dep. at 107 (responding "no" to question whether, other than what the plaintiff had already described, Moore did anything else to discriminate against him because of his disability), 112-13 (responding "no" to the question whether he construed anything other than two previously described incidents as harassment by Moore), 114 (responding "no" to the question whether, other than what the plaintiff had already described, there were any other facts supporting his allegation that he was discriminated against on the basis of disability).  He offers no explanation for his sudden recollection, on the heels of the defendant's motion for summary judgment, of this significant fact.  *See* Strike Response ¶ 13; *see also, e.g.*, *Orta-Castro*, 447 F.3d at 110-11 ("Orta's memory problems [during her deposition] seem to have developed only after Merck filed its summary judgment motion.  The district court could well find incredible this sudden, retroactive bout of amnesia."); *Hernandez-Loring v. Universidad Metropolitana*, 233 F.3d 49, 55 (1st Cir. 2000) ("the district court was entitled to disregard any completely new incident that Hernandez-Loring described for the first time in her affidavit, assuming that prior questions [at deposition] had clearly asked for such information").[10]

---

[9] To the extent that the plaintiff alleges that Moore treated him in a "harassing" manner, *see* Ziehm Aff. ¶ 12, I construe the word in the sense used by laypersons rather than as stating the legal conclusion that Moore harassed the plaintiff based on an alleged disability.

[10] The plaintiff argues that his new statement is consistent with, and merely supplements, his previous allegations that he feared Moore, who harassed him.  *See* Strike Response ¶ 13.  He cites *Darczi v. Vermont Ctr. for the Deaf & Hard of Hearing, Inc.*, No. Civ. 02-440-JM, 2004 WL 180250 (D.N.H. Jan. 28, 2004), for the proposition that "it would be an abuse of discretion to disregard an affidavit pertaining to previously identified incidents that are merely described with more specificity in the affidavit."  *Id*. (quoting *Darczi*, 2004 WL 180250, at *6).  The statement in *(continued on next page)*

<u>Paragraph 14, second sentence</u>: **GRANTED**.  In failing to identify the source of the statement in question (that Moore told the plaintiff that "RadioShack" believed his sales were due to pity from customers because of his Asperger's Syndrome, *see* Ziehm Aff. ¶ 14), the plaintiff provides insufficient information to determine whether, as he contends, the statement is an admission of a party-opponent and hence not excludable on hearsay grounds.  *See* Strike Response ¶ 14; *Vazquez v. Lopez-Rosario*, 134 F.3d 28, 34 (1st Cir. 1998) ("For a statement to be an admission under Rule 801(d)(2), the statement must be made by a party, or by a party's agent or servant within the scope of the agency or employment.  Each link in the chain must be admissible, either because it is an admission and thus not hearsay or under some other hearsay exception.") (citations and footnote omitted).  In any event, to the extent that the statement qualifies as an admission, the plaintiff failed to disclose it in response to an interrogatory asking him to identify the substance of any admission of fault or liability made by a party or alleged agent of any party to the lawsuit.  *See* Plaintiff's Answers to Defendant's First Set of Interrogatories ("Plaintiff's Interrog. Ans.") (Docket No. 62-9), Exh. 9 to Motion To Strike, ¶ 15; Fed. R. Civ. P. 26(e)(1)(A) (party who has, *inter alia*, responded to an interrogatory must supplement or correct its response in a timely manner).  Pursuant to Federal Rule of Civil Procedure 37(c)(1), this failure precludes the plaintiff from using the information "to supply evidence on a motion . . . unless the failure was substantially justified or is harmless."  Fed. R.

---

question does not fall within the *Daroczi* principle.  It is a previously *unidentified* incident of alleged discrimination. The plaintiff's citations to *Hinkley*, *Joy*, and *Chaloult* likewise are unavailing.  In *Hinkley*, as in *Daroczi*, the plaintiff was permitted to elaborate in her affidavit on details of previously disclosed incidents.  *See Hinkley*, 122 F. Supp.2d at 59 n.1.  In *Joy*, there was ambiguity as to the meaning of the deponent's response.  *See Joy*, 223 F. Supp.2d at 317 n.4.  Here, the questions asked, and answers given, were straightforward.  While, in *Chaloult*, the court did permit the affiant to identify "additional incidents" consistent with the allegations made in his complaint, the question posed at his deposition ("Is there anything else about your claim that you feel is important that we haven't addressed today?") was so broad as to be meaningless, *see Chaloult*, 2003 WL 21803319, at *3, and thus cannot be said to have "clearly asked for" the information he omitted to supply, *see Hernandez-Loring*, 233 F.3d at 55.

Civ. P. 37(c)(1).  The plaintiff's proffer of this material alleged admission for the first time in response to the defendant's summary judgment motion hardly can be described as "harmless." He offers no justification for his earlier failure to disclose it.  *See* Strike Response ¶ 14.

Paragraph 15: **GRANTED**.  The plaintiff did not disclose the allegation that, when he "expressed discomfort with pursuing unethical sales practices," Moore "asked [him] whether [his] Asperger's Syndrome gave [him] some sort of moral compass that precluded [him] from wanting to make money for [himself,]" Ziehm Aff. ¶ 15, despite being asked questions at his deposition that clearly asked for such information, *see* Ziehm Dep. at 107 (responding "no" to question whether, other than what the plaintiff had already described, Moore did anything else to discriminate against him because of his disability), 112-13 (responding "no" to the question whether he construed anything other than two previously described incidents as harassment by Moore).  He offers no explanation for his sudden recollection, on the heels of the defendant's motion for summary judgment, of this significant fact.  *See* Strike Response ¶ 15; *see also, e.g.*, *Orta-Castro*, 447 F.3d at 110-11; *Hernandez-Loring*, 233 F.3d at 55.[11]

Paragraph 17: **GRANTED**.  The statement is in the nature of a legal conclusion rather than a "fact" or a legitimate Rule 701 opinion.  *See, e.g., García*, 535 F.3d at 33 n.5; *Learnard*, 182 F. Supp.2d at 120 & n.4.  In addition, the statement contradicts the plaintiff's deposition

---

[11] The plaintiff argues that this new statement merely supplies further detail of a previously disclosed incident in which Moore berated him for not selling telephones at full price.  *See* Strike Response ¶ 16.  While the new assertion may have something to do with a previously described incident, it is in itself a significant, previously *undisclosed* incident of alleged discrimination.  In addition, the plaintiff was pointedly asked what was said when Moore berated him for not selling telephones at full price, and responded that he could not remember.  *See* Ziehm Dep. at 84.  His lack of explanation for his sudden recall, and its timing, counsel against admission of this new information.  *See, e.g., Orta-Castro*, 447 F.3d at 110-11; *Hernandez-Loring*, 233 F.3d at 55.

testimony, *compare* Ziehm Aff. ¶ 17 *with* Ziehm Dep. at 84-85, and he provides no satisfactory explanation for the change, *see* Strike Response ¶ 17; *Thore*, 466 F.3d at 186 n.7.[12]

    Paragraph 18, third sentence: **GRANTED** with respect to the portion of the sentence stating, "which were intended to intimidate me into breaching ethical sales standards[,]" Ziehm Aff. ¶ 18, the plaintiff having demonstrated no personal knowledge of Moore's motivation, *see Livick*, 524 F.3d at 28; *Alexis*, 67 F.3d at 347; *Ahmed*, 1999 WL 1319005, at *1. Otherwise **DENIED**. While the balance of the statement contradicts the plaintiff's deposition testimony, *compare* Ziehm Aff. ¶ 18 *with* Ziehm Dep. at 33-34, he provides a satisfactory explanation for the change: that several of his evaluations were not produced to him by the defendant until September 2, 2009, two weeks after his August 19, 2009, deposition, *see* Strike Response ¶ 18; *Thore*, 466 F.3d at 186 n.7.[13]

    Paragraph 19: **DENIED**. The statement can be discerned to be rationally based on the plaintiff's perception, as required by Rule 701. If, as the defendant suggests, the opinion is in one or more respects unsupported by the underlying evidentiary record, *see* Strike Reply ¶ 19, that goes to its weight rather than its admissibility.[14]

---

[12] The plaintiff's reliance on *Chaloult*, *Hinkley*, and *Joy* to illustrate the asserted lack of contradiction between his deposition testimony and his affidavit is again unavailing. The question to which he answered "yes" was both pointed and, despite its awkward phrasing, unambiguous: "So, do you think that [Moore] was – that his reason for doing this [asking the plaintiff to sell telephones at full price] was solely motivated by increasing the sales in the store?" Ziehm Dep. at 85.

[13] The defendant disputes that the explanation is satisfactory on grounds that (i) the plaintiff failed, in his *errata* sheet signed on September 17, 2009, to make substantive changes to his deposition testimony reflecting the impact of the later-produced evaluations, and, (ii) in any event, the evaluations were not newly discovered evidence, the plaintiff having previously received and signed them. *See* Strike Reply ¶ 18. I am unpersuaded. The plaintiff had relatively little time, following the document production in question, to ensure that his testimony was unaffected in all substantive respects for purposes of filing of his *errata* sheet. *See* Fed. R. Civ. P. 30(e)(1) (deponent allowed 30 days to submit *errata* sheet after being notified by the officer that the transcript or recording is available). The defendant submits no evidence that the plaintiff received and signed the evaluations in question or that, if he did, he retained copies of them, permitting him to refresh his recollection as to their contents.

[14] To the extent that the plaintiff alleges that Moore and others subjected him to "harassment," Ziehm Aff. ¶ 19, I construe the word in the sense used by laypersons rather than as stating the legal conclusion that Moore harassed the plaintiff based on an alleged disability.

Paragraph 20: **GRANTED**.  The statement contradicts the plaintiff's deposition testimony, *compare* Ziehm Aff. ¶ 20 *with* Ziehm Dep. at 107, 153, and he provides no satisfactory explanation for the change, *see* Strike Response ¶ 20; *Thore*, 466 F.3d at 186 n.7.

Paragraph 21:  **GRANTED** as to the second sentence.  The statement contradicts the plaintiff's deposition testimony, *compare* Ziehm Aff. ¶ 21 *with* Ziehm Dep. at 152, and he provides no satisfactory explanation for the change, *see* Strike Response ¶ 21; *Thore*, 466 F.3d at 186 n.7.  Otherwise **DENIED**.  The defendant fails to demonstrate that the information in the first sentence should have been disclosed in response to a specific prior discovery request or that it contradicts the described deposition testimony, *see* Motion To Strike ¶ 21; Strike Reply ¶ 21.[15]

Paragraph 22: **GRANTED**.  To the extent that the plaintiff states that Zack Stover was closing the store, *see* Ziehm Aff. ¶ 22, the statement contradicts his deposition testimony, *compare id. with* Ziehm Dep. at 107, 153, and he provides no satisfactory explanation for the change, *see* Strike Response ¶ 22; *Thore*, 466 F.3d at 186 n.7.  To the extent that the plaintiff states that he was finally trained to close the store "due to Moore's fear that RadioShack would find out" that Stover was closing the store, the plaintiff offers no foundation that he possessed personal knowledge of Moore's reasons for the decision, or that his opinion was otherwise rationally based on his perceptions.  *See Livick*, 524 F.3d at 28; *Ahmed*, 1999 WL 1319005, at *1; Fed. R. Evid. 701.

Paragraph 23: **GRANTED**.  The plaintiff did not disclose the allegations that Moore "asked [him] once again whether [his] Asperger's Syndrome created some sort of moral compass

---

[15] To the extent that the defendant relies on the plaintiff's failure to disclose this information in response to the question, at his deposition, whether there were any other facts that supported his claim that he was discriminated against on the basis of disability, *see* Motion To Strike ¶ 21; Ziehm Dep. at 114, that question is too broadly worded to have clearly asked for the information.  *See Chaloult*, 2003 WL 21803319, at *3; *Hernandez-Loring*, 233 F.3d at 55.

that stopped [him] from doing things that benefited [him] and [his] sales" or that Moore subsequently called him a "retard[,]" Ziehm Aff. ¶ 23, despite being asked questions at his deposition that clearly asked for such information, *see* Ziehm Dep. at 107 (responding "no" to question whether, other than what the plaintiff had already described, Moore did anything else to discriminate against him because of his disability), 112-13 (responding "no" to the question whether he construed anything, other than two previously described incidents, as harassment by Moore).  He offers no explanation for his sudden recollection, on the heels of the defendant's motion for summary judgment, of these significant facts.  *See* Strike Response ¶ 23; *see also, e.g.*, *Orta-Castro*, 447 F.3d at 110-11; *Hernandez-Loring*, 233 F.3d at 55.[16]

Paragraph 24, third through seventh sentences: **GRANTED** as to third sentence.  The statement contradicts the plaintiff's deposition testimony, *compare* Ziehm Aff. ¶ 24 *with* Ziehm Dep. at 64-65, and he provides no satisfactory explanation for the change, *see* Strike Response ¶ 24; *Thore*, 466 F.3d at 186 n.7.  Otherwise **DENIED**.  The defendant fails to demonstrate that these statements should have been disclosed in response to a specific prior discovery request, *see* Motion To Strike ¶ 24; Strike Reply ¶ 24; *see also* Fed. R. Civ. P. 26(e) & 37(c)(1), and they are consistent with portions of the plaintiff's deposition testimony identified in response to the Motion To Strike, *see* Strike Response ¶ 24; Ziehm Dep. at 111-12, 132-33.

---

[16] The plaintiff argues that the new statements merely supply further detail of a previously disclosed incident in which Moore berated him for not selling telephones at full price.  *See* Strike Response ¶ 23.  While the new assertions may have something to do with a previously described incident, they are in themselves significant, previously *undisclosed* incidents of alleged discrimination.  In addition, the plaintiff was pointedly asked what was said when Moore berated him for not selling telephones at full price, and responded that he could not remember. *See* Ziehm Dep. at 84.  His lack of explanation for his sudden recall, and its timing, counsel against admission of this new information.  *See, e.g.*, *Orta-Castro*, 447 F.3d at 110-11; *Hernandez-Loring*, 233 F.3d at 55.

Paragraph 25: **GRANTED**.   The statement contradicts the plaintiff's deposition testimony, *compare* Ziehm Aff. ¶ 25 *with* Ziehm Dep. at 107-08, and he provides no satisfactory explanation for the change, *see* Strike Response ¶ 25; *Thore*, 466 F.3d at 186 at n.7.[17]

Paragraph 26: **GRANTED** as to the first, third and fourth sentences.   The first sentence indicates on its face that the plaintiff lacks personal knowledge as to the RadioShack policy in question.   *See* Ziehm Aff. ¶ 26; *see Livick*, 524 F.3d at 28; *Ahmed*, 1999 WL 1319005, at *1. With respect to the third and fourth sentences, the plaintiff argues that portions of his deposition cited by the defendant in support of its request to strike paragraph 26 provide the basis for the assertions made in those sentences, *see* Strike Response ¶ 26, but they do not, *see* Motion To Strike ¶ 26; Ziehm Dep. at 107-09, 112-14; *Hernandez-Loring*, 233 F.3d at 55.   Otherwise **DENIED**.   The second sentence is consistent with portions of the plaintiff's deposition testimony cited by the defendant.   *See* Motion To Strike ¶ 26; Ziehm Dep. at 108-09.

Paragraph 27: **GRANTED**.   The plaintiff did not disclose the allegations that he brought up promotion to management with Moore on several occasions and that Moore told him his Asperger's Syndrome held him back from being a manager, a "retard" could not run the store, and because of his Asperger's Syndrome, he would never be a manager and Moore would not feel comfortable promoting him, *see* Ziehm Aff. ¶ 27, in response to questions at his deposition that clearly asked for such information, *see* Ziehm Dep. at 107 (responding "no" to question whether, other than what the plaintiff had already described, Moore did anything else to

---

[17] The plaintiff cites other portions of his deposition testimony that he contends are consistent with his statement in paragraph 25 that, while living with Moore, he inquired about becoming an assistant manager.  *See* Ziehm Aff. ¶ 25; Strike Response ¶ 25.   While the cited testimony indicates that the plaintiff was interested in a promotion at RadioShack and/or expected that such a promotion would be offered, and that he was offered management training, which offer was retracted, they do not indicate that he took any steps to apply for or inquire about a promotion.  *See* Ziehm Dep. at 107-10, 128, 152, 186.   While it is true, as the plaintiff notes, *see* Strike Response ¶ 25, that he answered the question whether he ever applied for another position within RadioShack: "Not that I can recall[,]" Ziehm Dep. at 107, he offers no explanation for now recalling that he inquired about becoming an assistant manager.

discriminate against him because of his disability; responding "[n]ot that I can recall" to question whether he had ever applied for another position within RadioShack), 107-08 (responding that he was "waiting for management to be offered" to question whether he ever applied for any type of management position), 112-13 (responding "no" to the question whether he construed anything other than two previously described incidents as harassment by Moore). He offers no explanation for his sudden recollection, on the heels of the defendant's motion for summary judgment, of these significant facts. *See* Strike Response ¶ 27; *see also, e.g.*, *Orta-Castro*, 447 F.3d at 110-11; *Hernandez-Loring*, 233 F.3d at 55.[18]

Paragraph 28: **GRANTED** for the reasons given in response to the motion to strike paragraph 27, above.

Paragraph 29: **GRANTED** to the extent that the plaintiff attributes his stress and anxiety to his Asperger's Syndrome. As a layperson, he is not competent to do so. *See, e.g., Hrichak*, 498 F. Supp.2d at 382. Otherwise **DENIED**. The plaintiff is competent to testify that the Loss Prevention Investigation caused him extreme stress and anxiety. That is within the realm of ordinary experience and thus need not be established by expert testimony. *See, e.g.*, *Ankuda*, 535 F. Supp.2d at 174; *EEOC*, 2008 WL 4489256, at *6.[19]

---

[18] The plaintiff cites portions of his deposition testimony in support of the proposition that paragraph 27 contains nothing new and is consistent with and/or supplemental to allegations made at his deposition. *See* Strike Response ¶ 27. The cited pages do not support that proposition. *See* Ziehm Dep. at 107-10, 128, 152, 186. His citations to *Hinkley*, *Joy*, and *Chaloult* likewise are unavailing. In *Hinkley*, the plaintiff was permitted to elaborate in her affidavit on details of previously disclosed incidents. *See Hinkley*, 122 F. Supp.2d at 59 n.1. Here, the specific claims were previously undisclosed. In *Joy*, there was ambiguity as to the meaning of the deponent's response. *See Joy*, 223 F. Supp.2d at 317 n.4. Here, the questions asked, and answers to them, were straightforward. While, in *Chaloult*, the court did permit the affiant to identify "additional incidents" consistent with the allegations made in his complaint, the question posed at his deposition ("Is there anything else about your claim that you feel is important that we haven't addressed today?") was so broad as to be meaningless, *see Chaloult*, 2003 WL 21803319, at *3, and thus cannot be said to have "clearly asked for" the information he omitted to supply, *see Hernandez-Loring*, 233 F.3d at 55.

[19] To the extent that the defendant relies on the plaintiff's failure to disclose this information in response to the question, at his deposition, whether there were any other facts that supported his claim that he was discriminated against on the basis of disability, *see* Motion To Strike ¶ 29; Ziehm Dep. at 114, that question is too broadly worded *(continued on next page)*

Paragraph 30:  **DENIED**.  The defendant fails to demonstrate that the statement should have been disclosed in response to a specific prior discovery request, *see* Motion To Strike ¶ 30; Strike Reply ¶ 30; *see also* Fed. R. Civ. P. 26(e) & 37(c)(1), or to a question asked during deposition clearly calling for the information, *see* Motion To Strike ¶ 30.

Paragraph 32, second, third, and fourth sentences & Exh. B thereto: **GRANTED**.  In the second and third sentences, the plaintiff summarizes findings in a copy of a medical record attached as Exh. B to his affidavit, described by him in the fourth sentence as a true and accurate copy.  *See* Ziehm Aff. ¶ 32; Docket No. 47-2, Exh. B thereto.  The second and third sentences are hearsay.[20]  The attached document does not satisfy the hearsay exception contained in Federal Rule of Evidence 803(6) because it has not been authenticated by "the testimony of the custodian or other qualified witness" or by certification.  *See* Fed. R. Evid. 803(6); Ziehm Aff. ¶ 32; Exh. B thereto.  The plaintiff, who has not been shown to have knowledge of the manner in which records were kept at the facility in question, is not a "qualified witness" for this purpose. *See, e.g., United States v. Console*, 13 F.3d 641, 657 (3d Cir. 1993); *United States v. McGill*, 953 F.2d 10, 14-15 (1st Cir. 1992).

Paragraph 33 & Exh. C thereto: **GRANTED** as to the second sentence, describing the attached medical record as a "true and accurate copy[,]" and as to the copy itself, attached as Exh. C thereto.  The attached document does not satisfy the hearsay exception contained in Federal Rule of Evidence 803(6) because it has not been authenticated by "the testimony of the custodian or other qualified witness" or by certification.  *See* Fed. R. Evid. 803(6); Ziehm Aff.

---

to have clearly asked for the information, *see Chaloult*, 2003 WL 21803319, at *3; *Hernandez-Loring*, 233 F.3d at 55.

[20] The plaintiff protests that his two-sentence summary of the medical findings is not hearsay because it is not offered for the truth of the matter asserted, but rather to demonstrate the diagnosis that he received and relayed to RadioShack.  *See* Strike Response ¶ 32.  The sentences, as worded, do appear to be offered for the truth of the matter asserted: that he was found to have the injuries described.  *See* Ziehm Aff. ¶ 32.

¶ 33; Docket No. 47-3, Exh. C thereto.  The plaintiff, who has not been shown to have knowledge of the manner in which records were kept at the facility in question, is not a "qualified witness" for this purpose.  *See, e.g., Console*, 13 F.3d at 657; *McGill*, 953 F.2d at 14-15.  Otherwise **DENIED**.  The first sentence plausibly is offered, not for the truth of the matter asserted in the medical document, but rather to show the nature of the instructions given to the plaintiff upon his release.  It is thus neither hearsay nor in the nature of a "medical opinion" on the plaintiff's part.

Paragraph 36: **GRANTED** as to that portion of the first sentence stating, "and the general exacerbation of my Asperger's Syndrome[.]"  Ziehm Aff. ¶ 36.  The plaintiff is not competent, as a layperson, to offer the opinion that incidents at work caused a general exacerbation of his Asperger's Syndrome.  *See, e.g., Hrichak*, 498 F. Supp.2d at 382.  Also **GRANTED** as to that portion of the second sentence stating, "and neither Mike Chisholm nor any other individual from RadioShack entered into a dialogue with me to determine what accommodations were available to allow me to continue working at RadioShack and be mentally healthy given my Asperger's Syndrome[.]"  Ziehm Aff. ¶ 36.  That is in the nature of a legal argument or conclusion rather than a "fact."  *See, e.g., García*, 535 F.3d at 33 n.5; *Learnard*, 182 F. Supp.2d at 120 & n.4.  Otherwise **DENIED**.  The plaintiff is competent to testify that the spraying incident caused him stress and anxiety.  *See, e.g.*, *Ankuda*, 535 F. Supp.2d at 174; *EEOC*, 2008 WL 4489256, at *6.  In addition, this portion of the paragraph can be discerned to be rationally based on the plaintiff's perception as required by Rule 701.[21]

---

[21] To the extent that the plaintiff asserts that Moore subjected him to "ongoing harassment[,]" Ziehm Aff. ¶ 36, I construe the word in the sense used by laypersons rather than as stating the legal conclusion that Moore harassed the plaintiff based on an alleged disability.  With respect to that portion of paragraph 36 as to which I deny the defendant's motion to strike, to the extent that the defendant relies on the plaintiff's failure to disclose information in response to the question at deposition whether there were any other facts that supported his claim that he was discriminated against on the basis of disability, *see* Motion To Strike ¶ 36; Ziehm Dep. at 114, that question was too
*(continued on next page)*

Paragraph 38: **DENIED**.   The statement cannot be discerned to lack foundation or constitute speculation.

Paragraph 39: **DENIED**.   The statement does not contradict the cited testimony. *Compare* Ziehm Aff. ¶ 39 *with* Ziehm Dep. at 100-04.

Paragraph 41: **DENIED**.  The statement can be discerned to be rationally based on the plaintiff's perception as required by Rule 701.  If, as the defendant suggests, the opinion is in one or more respects unsupported by the underlying evidentiary record, *see* Strike Reply ¶ 41, that goes to its weight rather than its admissibility.  The statement does not contradict cited portions of the plaintiff's deposition testimony.  *Compare* Ziehm Aff. ¶ 41 *with* Ziehm Dep. at 51, 68.[22]

Paragraph 42: **GRANTED**.  The plaintiff stated, in response to an interrogatory asking him to identify every person employed by or associated by RadioShack with whom he had communicated concerning his claims in the complaint, including the date and substance of each such communication, that he had spoken to Ashidda Foster on July 17, 2007.  *See* Plaintiff's Interrog. Ans. ¶ 5.  From all that appears, he never supplemented that response to disclose a second conversation with her on July 27, 2007, as required by Federal Rule of Civil Procedure 26(e)(1)(A).  He supplies no "substantial justification" for that omission, which cannot be said to be harmless.  *See* Strike Response ¶ 42; Fed. R. Civ. P. 37(c)(1).  Accordingly, he cannot now be permitted to testify to the contents of the second asserted conversation.   In addition, the statement contradicts the plaintiff's deposition testimony that he did not talk to Ashidda Foster at any other time besides July 17, 2007, *compare* Ziehm Aff. ¶ 42 *with* Ziehm Dep. at 118-19, and

---

broadly worded to have clearly asked for that information, *see Chaloult*, 2003 WL 21803319, at *3; *Hernandez-Loring*, 233 F.3d at 55.

[22] To the extent that the plaintiff states that he told Ashidda Foster about "previous harassment" by Moore, Stover, and Mark Brophy, Ziehm Aff. ¶ 41, I construe the word in the sense used by laypersons rather than as stating the legal conclusion that Moore harassed the plaintiff based on an alleged disability.

he provides no satisfactory explanation for the change, *see* Strike Response ¶ 42; *Thore*, 466 F.3d at 186 n.7.[23]

Paragraph 43:  **GRANTED**.  The plaintiff plainly lacks personal knowledge as to the persons with whom Foster spoke and the conclusions she reached after speaking with them.  *See Livick*, 524 F.3d at 28; *Ahmed*, 1999 WL 1319005, at *1.  His quotations from Foster's written account do not supply the requisite foundation for expressing a Rule 701 opinion, which must be "rationally based on the perception of the witness," Fed. R. Evid. 701, a limitation that incorporates "the familiar requirement of first-hand knowledge or observation[,]" *id*. advisory committee's note.

Paragraph 44:  **GRANTED**.  The plaintiff plainly lacks personal knowledge regarding John Raydor's email to Foster.  *See Livick*, 524 F.3d at 28; *Ahmed*, 1999 WL 1319005, at *1. His quotation from the email does not supply the requisite foundation for expressing a Rule 701 opinion, which must be "rationally based on the perception of the witness," Fed. R. Evid. 701, a limitation that incorporates "the familiar requirement of first-hand knowledge or observation[,]" *id*. advisory committee's note.

Paragraph 45:  **GRANTED**.  The plaintiff plainly lacks personal knowledge regarding the conclusions reached by RadioShack in investigating his complaint.  *See Livick*, 524 F.3d at 28; *Ahmed*, 1999 WL 1319005, at *1.  His citation to an attached document does not supply the requisite foundation for expressing a Rule 701 opinion, which must be "rationally based on the

---

[23] The plaintiff asserts that the defendant's own documents show that this second conversation took place.  *See* Strike Response ¶ 42; Docket No. 40, Exh. C to Affidavit of Michael Chisholm ("Chisholm Aff.") (Docket No. 83-6), attached to Defendant's SMF, at Bates Stamp No. D044.  However, his account of what he said to Foster differs materially enough from hers, *compare id. with*  Ziehm Aff. ¶ 42, that the omission to disclose his version cannot be said to be either substantially justified or harmless.

perception of the witness," Fed. R. Evid. 701, a limitation that incorporates "the familiar requirement of first-hand knowledge or observation[,]" *id*. advisory committee's note.

Paragraph 46, second, fourth, and fifth sentences: **GRANTED**.[24]   The statements made in the fourth and fifth sentences should have been, but were not, disclosed in response to two of the defendant's interrogatories.  *See* Plaintiff's Interrog. Ans. ¶¶ 5, 16; Fed. R. Civ. P. 26(e)(1)(A). He supplies neither "substantial justification" for that omission nor reason to believe that it is harmless.  *See* Strike Response ¶ 46; Fed. R. Civ. P. 37(c)(1).  Also, **GRANTED** to the extent that the plaintiff states, in the second sentence, that he called "to learn whether my reasonable accommodation request would be granted[,]" which sets forth the legal conclusion that he made a "reasonable accommodation request[.]"   Ziehm Aff. ¶ 46; *García*, 535 F.3d at 33 n.5; *Learnard*, 182 F. Supp.2d at 120 & n.4.

Paragraph 47: **GRANTED**.  The plaintiff plainly lacks personal knowledge regarding the scope of John Hindal's authority.  *See Livick*, 524 F.3d at 28; *Ahmed*, 1999 WL 1319005, at *1.

Paragraph 48, first, third, and fourth sentences: **GRANTED** as to the phrase "Asperger's related" in the first sentence.  Ziehm Aff. ¶ 48.  The plaintiff is not competent, as a layperson, to offer the opinion that incidents at work caused a general exacerbation of his Asperger's Syndrome.  *See, e.g., Hrichak*, 498 F. Supp.2d at 382.  **GRANTED** as to the fourth sentence, which contradicts the plaintiff's prior deposition testimony as to why he did not want to return to work, *compare* Ziehm Aff. ¶ 48 *with* Ziehm Dep. at 96-97, and as to which no satisfactory explanation for the change is provided, *see* Strike Response ¶ 48; *Thore*, 466 F.3d at 186 n.7.[25]

---

[24] The defendant refers to the "third and fourth sentences," however it is clear from its discussion that it targets the fourth and fifth sentences.  *See* Motion To Strike ¶ 46; Ziehm Aff. ¶ 46.

[25] The plaintiff cites other pages of his deposition testimony to show that the allegations in question are not new. *See* Strike Response ¶ 48.  The cited pages do not reveal that the new matter in the fourth sentence was previously disclosed.  *See* Ziehm Dep. at 51, 90-104, 111-13.  The plaintiff also states that the allegations in his affidavit are consistent with other evidence, including documents and others' testimony at deposition and in an affidavit.  *See (continued on next page)*

Otherwise **DENIED**.  The substance of the third sentence is consistent with the plaintiff's deposition testimony that he was "scared of [Moore] and scared of what would happen if I returned."  Ziehm Dep. at 111.

Paragraph 50: **GRANTED**.  The plaintiff did not disclose the allegation that he called Chisholm and spoke with him after receiving Chisholm's letter of August 1, 2007, despite specifically being asked at deposition whether he had further conversations with Chisholm after receiving that letter.  *See* Ziehm Dep. at 98, 104.  While it is true, as the plaintiff observes, *see* Strike Response ¶ 50, that he responded at deposition that he did not recall whether he had a further such conversation, *see* Ziehm Dep. at 98, 104, he offers no explanation for his sudden recollection, on the heels of the defendant's motion for summary judgment, of this significant fact.  *See* Strike Response ¶ 50; *see also, e.g.*, *Orta-Castro*, 447 F.3d at 110-11; *Hernandez-Loring*, 233 F.3d at 55.

Paragraph 51: **GRANTED**.  This statement contradicts the plaintiff's prior deposition testimony as to why he did not return to work, *compare* Ziehm Aff. ¶ 51 *with* Ziehm Dep. at 96-97, and he provides no satisfactory explanation for the change, *see* Strike Response ¶ 51; *Thore*, 466 F.3d at 186 n.7.

### B.  Cognizable Facts

The parties' statements of material facts, credited to the extent either admitted or supported by record citations in accordance with Local Rule 56, with disputes in cognizable facts resolved in favor of the plaintiff as nonmovant, and taking into account the foregoing disposition of the Motion To Strike, reveal the following relevant facts.

---

Strike Response ¶ 48.  However, the question presented for *Colantuoni* purposes is whether the *affiant* has contradicted his or her prior sworn deposition testimony without adequate explanation.  *See Colantuoni*, 44 F.3d at 4-5.

### 1. Job Duties and Performance

At all times relevant to the plaintiff's complaint, Michael Chisholm was RadioShack's district manager with responsibility for RadioShack stores in Maine, and Mark Brophy was the loss prevention manager for RadioShack's stores in Maine.  Defendant's SMF ¶ 1; Plaintiff, Joseph T. Ziehm's, Opposing Statement of Material Facts and Additional Statement of Material Facts ("Plaintiff's Opposing SMF") (Docket No. 46) ¶ 1.  James Elskamp was the store manager of RadioShack's Lewiston, Maine, store from the beginning of the plaintiff's employment at the Lewiston store in late 2005 until July 2006, after which Kasey Moore became the store manager of the Lewiston store.  Id.[26]  Moore reported to Chisholm.  Id. ¶ 9.

In September 2005, RadioShack hired the plaintiff to work as a seasonal sales associate at its store in Machias, Maine.  Id. ¶ 2.  In that position, he replenished stock, cleaned the store, and sold merchandise.  Id.  In December 2005, the plaintiff requested and received a transfer to the RadioShack store in Lewiston, where he worked as a part-time sales associate.  Id. ¶ 4.  Chisholm approved that transfer.  Id.  In that position, the plaintiff replenished stock, cleaned the store, and sold merchandise.  Id.

On April 15, 2006, RadioShack promoted the plaintiff to a full-time sales associate at its Lewiston store.  Id. ¶ 5.  In that position, he had the same job duties as when he was a part-time sales associate.  Id.  Chisholm approved this promotion.  Id.  As a full-time sales associate, the plaintiff made $7.50 per hour plus commissions.  Id. ¶ 6.  Commissions were determined based on sales of cellular phones, RadioShack Answers Plus credit cards, and add-on accessories.  Id.

Moore told the plaintiff that he was not mature enough to close the store.  Plaintiff's Statement of Additional Material Facts Pursuant to M.R. Civ. P. 56 ("Plaintiff's Additional

---

[26] My recitation incorporates the plaintiff's qualification.

25

SMF"), commencing on page 16 of Plaintiff's Opposing SMF, ¶ 113; Ziehm Aff. ¶ 21. However, during 2006, RadioShack provided him with training on store closing duties and authorized him to close the store at the end of the day. Defendant's SMF ¶ 7; Chisholm Aff. ¶ 11. Chisholm approved the plaintiff's authority to hold keys and close the store. *Id.*

As a full-time sales associate, the plaintiff was able to perform all of the job duties of his position. Defendant's SMF ¶ 8; Plaintiff's Opposing SMF ¶ 8. In fact, he performed his job duties well. *Id.* He was one of the top salespeople and at times even trained other salespeople. *Id.* While the plaintiff worked at RadioShack, he was never disciplined. *Id.* ¶ 10. In addition, he was never reprimanded by any of his supervisors either verbally or in writing. *Id.* While he was employed at RadioShack, all of his performance evaluations were positive, and he never received any complaints about his job performance. *Id.* Nevertheless, he received stern verbal and written warnings and evaluations from Moore. Plaintiff's Additional SMF ¶ 110; Ziehm Aff. ¶ 18. While the plaintiff was never formally disciplined, he was frequently subjected to improper investigation, harassment, intimidation, and bullying by his manager and other RadioShack employees. Plaintiff's Additional SMF ¶ 111; Ziehm Aff. ¶ 19.

### 2. Plaintiff's Asperger's Syndrome

The plaintiff has Asperger's Syndrome. Defendant's SMF ¶ 12; Plaintiff's Opposing SMF ¶ 12. Asperger's Syndrome is on the autism spectrum of human behavioral conditions. Plaintiff's Additional SMF ¶ 94; Bridgman Dep. at 11.[27] Among the typical symptoms of Asperger's Syndrome are social isolation, anxiety, and difficulty forming and keeping long-term

---

[27] I disregard the balance of this paragraph, sustaining in part the defendant's request to strike on the basis that the statement is unsupported by the citation given. *See* Defendant's Reply to Plaintiff's Statement of Additional Material Facts ("Defendant's Reply SMF") (Docket No. 84) ¶ 94.

relationships going.  Plaintiff's Additional SMF ¶ 95; Bridgman Dep. at 11.[28]  The plaintiff's

Asperger's Syndrome limits his ability to interact with others.  Defendant's SMF ¶ 13; Ziehm

Dep. at 105.   Specifically, the plaintiff lacks tact, self-discipline, and awareness of a

conversation.  *Id.*

When the plaintiff worked at the RadioShack in Machias, he told Chisholm that he had

Asperger's Syndrome.  Defendant's SMF ¶ 12; Ziehm Dep. at 71.  When Moore became the

manager of the store in Lewiston, the plaintiff told Moore that he had Asperger's Syndrome.

Defendant's SMF ¶ 12; Plaintiff's Opposing SMF ¶ 12.  The fact that Ziehm had Asperger's

Syndrome was not a problem with either Chisholm or Moore.  Defendant's SMF ¶ 12; Ziehm

Dep. at 72.

The plaintiff described his experience at RadioShack as being put through hell.

Plaintiff's Additional SMF ¶ 99; Defendant's Reply SMF ¶ 99.[29]   Discussing his work

experience made the plaintiff so anxious and stressed that Dr. Bridgman determined it prudent to

avoid the subject when evaluating him.  Plaintiff's Additional SMF ¶ 100; Bridgman Dep. at 34.

Despite the work environment at the store, prior to a spraying incident, the plaintiff was able to

---

[28] My recitation incorporates, in part, the defendant's qualification.  I disregard paragraph 96 of the Plaintiff's Additional SMF, sustaining the defendant's objections, *see* Defendant's Reply SMF ¶ 96, that (i) the first sentence constitutes a legal conclusion, *see, e.g., García*, 535 F.3d at 33 n.5; *Learnard*, 182 F. Supp.2d at 120 & n.4, (ii) the plaintiff is not competent as a layperson to identify Asperger's Syndrome as the cause of his symptoms, *see, e.g., Hrichak*, 498 F. Supp.2d at 382, and (iii) the cited portion of Dr. Bridgman's testimony does not support the assertions made.  I also disregard paragraph 97, sustaining the defendant's objections.  *See* Defendant's Reply SMF ¶ 97.  In describing anxiety as a comorbidity of Asperger's Syndrome, Dr. Bridgman was testifying as to the condition generally, not the plaintiff's condition.  *See* Bridgman Dep. at 77-78, 86.  In addition, Dr. Bridgman indicated that he was not retained to testify as an expert on the subject of the plaintiff's anxiety and its causes, *see id.* at 38-39, 59-60.  I likewise disregard the plaintiff's denial of the defendant's paragraph 13, which mirrors his paragraph 96.  *See* Plaintiff's Opposing SMF ¶ 13.

[29] The defendant qualifies this statement, asserting that Dr. Bridgman did not question the plaintiff regarding his claim that he had been "put through hell" and was not able to form an opinion with regard to that issue.  Defendant's Reply SMF ¶ 99; Bridgman Dep. at 81-84.

perform all job duties of the position.  Plaintiff's Additional SMF ¶ 101; Ziehm Aff. ¶ 10.[30]

Prior to the spraying incident on July 17, 2007, despite the harassment at RadioShack and the

stress the harassment caused him, the plaintiff did not request a reasonable accommodation for

his Asperger's condition because he did not believe that one was necessary.  Plaintiff's

Additional SMF ¶ 102; Ziehm Aff. ¶ 11.

### 3.  Interactions With Others

The plaintiff lived with Moore and Moore's fiancée, Christine Audibert, from the winter

of 2006 through the spring of 2007.  Defendant's SMF ¶ 15; Plaintiff's Opposing SMF ¶ 15.

The plaintiff went to live with Moore and Audibert because he and Moore had become friends.

Defendant's SMF ¶ 15; Ziehm Dep. at 48.  He got along well with Moore.  *Id.*  More was kind to

him and supportive of him.  *Id.*  Moore also understood that the plaintiff had issues at home with

his father and wanted to help him get out of a bad situation.  Defendant's SMF ¶ 15; Ziehm Dep.

at 48-49.  Moore was trying to protect the plaintiff and give him a safe place to stay.

Defendant's SMF ¶ 15; Ziehm Dep. at 49.[31]  The plaintiff's father was verbally abusive, drank a

lot, and said unkind things about the plaintiff's intelligence.  Defendant's SMF ¶ 16; Plaintiff's

Opposing SMF ¶ 16.  The plaintiff gets along well with his mother and his fiancée.  *Id.* ¶ 17.  He

also got along with his co-workers.  Defendant's SMF ¶ 17; Deposition of Kasey Moore

("Moore Dep.") (Docket No. 83-8), attached to Defendant's SMF, at 25-26.[32]

---

[30] I disregard the plaintiff's characterization of the work environment as "intolerable," Plaintiff's Additional SMF ¶ 101, sustaining the defendant's objection that it is argumentative and states a legal conclusion, *see* Defendant's Reply SMF ¶ 101; *García*, 535 F.3d at 33 n.5; *Learnard*, 182 F. Supp.2d at 120 & n.4.

[31] The plaintiff qualifies this statement, stating in part that because he could no longer tolerate living in the house knowing that Moore was cheating on Audibert, he eventually moved out.  Plaintiff's Additional SMF ¶ 15; Ziehm Dep. at 50.  I disregard the balance of his qualification, which is unsupported by the citation given.

[32] I disregard the plaintiff's qualification, which is unsupported by the citation given.

#### 4.  Eye-Spraying Incident

On July 17, 2007, the plaintiff was working at the RadioShack store in Lewiston. Defendant's SMF ¶ 18; Plaintiff's Opposing SMF ¶ 18.  While he was taking out the trash and walking to the front of the store to grab the trash can, another associate Zach Stover, grabbed a can of aerosol, said "draw, cowboy," and sprayed the plaintiff in the face with it.  *Id*.[33]  The plaintiff does not know why Stover sprayed him the eyes; however, he believes that Stover did so because he has Opposition Defiance Disorder.  *Id*. ¶ 19.[34]

The plaintiff called Moore on his cell phone to inform him that he had been sprayed in the eyes and needed to leave the store to obtain medical attention.  *Id*. ¶ 20.  Moore told the plaintiff that he could not leave the store and, if he did so, he would be fired.  *Id*.  The plaintiff stayed at the store until closing at 9 p.m.  *Id*.[35]  Moore stated that the plaintiff was responsible for working his shift.  *Id*. ¶ 21.  The plaintiff could not think of any reason that Moore told him not to leave the store, apart from the store policy that a 17-year-old, as Stover was then, cannot close the store.  *Id*.[36]

As a result of the spraying of the liquid in his eyes, the plaintiff's eyes burned and caused him severe pain throughout his shift and after.  Plaintiff's Additional SMF ¶ 131; Defendant's Reply SMF ¶ 131.  That evening, July 17, 2007, the plaintiff was taken by his father to St. Mary's Regional Medical Center and was seen in the emergency room by Dr. Spence R. Bisbing.  *Id*. ¶ 133.  The plaintiff was released from the hospital early on the morning of July 18, 2007,

---

[33] My recitation incorporates the plaintiff's qualification, to the extent it is supported by the citation given.
[34] My recitation incorporates the plaintiff's qualification.
[35] My recitation incorporates the plaintiff's qualification, to the extent it is supported by the citation given.
[36] My recitation incorporates the plaintiff's qualification, to the extent supported by citations to evidence not stricken in response to the Motion To Strike.

with a doctor's instruction to take at least one, and possibly two, days off from work for a workers' compensation injury to his eyes.  Plaintiff's Additional SMF ¶ 134; Ziehm Aff. ¶ 33.

On July 18, 2007, the plaintiff spoke with Moore.  Plaintiff's Additional SMF ¶ 135; Defendant's Reply SMF ¶ 135.  During that conversation, Moore told the plaintiff that he could not come in to cover the plaintiff's shift the previous night because he was on a date and was drunk at a bar called the "Rockin' Robin."  *Id*.  At his deposition, Moore stated that he told the plaintiff to go to the emergency room if he needed to and that Moore had not been at the "Rockin' Robin" and was not drunk when the plaintiff called, but rather had been fishing in Poland with his friend Nicole Fratus.  *Id*. ¶ 136.

### 5.  Requests for Transfer or Moore's Termination

In the aftermath of the spraying incident, because of the stress and anxiety occasioned by a physical assault, the toleration of that physical assault by the plaintiff's manager, and the ongoing harassment by his manager, the plaintiff asked Chisholm to either terminate Moore or to transfer him.  Plaintiff's Additional SMF ¶ 138; Ziehm Aff. ¶ 36.  His requests were continually denied.  *Id*.

On July 18, 2007, the plaintiff called Chisholm and told him about the spraying incident and that he no longer felt safe in the store.  Plaintiff's Additional SMF ¶ 139; Defendant's Reply SMF ¶ 139.  He told Chisholm that he wanted Moore and Stover fired or he wanted to be transferred to another store.  *Id*.  He already had an understanding that the manager at the Auburn RadioShack store wanted him to work there.  Plaintiff's Additional SMF ¶ 140; Ziehm Aff. ¶ 38.  When the plaintiff asked for a transfer, he told Chisholm that he knew that there was an opening in Brunswick and that he could work in the Auburn RadioShack store.  Plaintiff's Additional SMF ¶ 141; Ziehm Aff. ¶ 39.

John Ziehm, the plaintiff's father, spoke with Chisholm. Plaintiff's Additional SMF ¶ 142; Deposition of John C. Ziehm ("John Ziehm Dep.") (Docket No. 46-3), attached to Plaintiff's Opposing SMF, at 48. Chisholm told John Ziehm that he (John Ziehm) had nothing to do with the situation.[37]

The plaintiff asked for two transfers while he was employed at the RadioShack store in Lewiston. Defendant's SMF ¶ 35; Ziehm Dep. at 101-02. On both occasions, he asked to be transferred to the RadioShack store in Auburn, Maine. Defendant's SMF ¶ 35; Ziehm Dep. at 102. Both times, his requests were denied because he was too valuable an asset to the Lewiston store. *Id.*

The first time that the plaintiff asked for a transfer was before the incident with Stover. Defendant's SMF ¶ 36; Plaintiff's Opposing SMF ¶ 36. The sole reason that he requested the transfer was because he thought there would be a larger commission base at the RadioShack store in Auburn. *Id.* The second time that he asked for a transfer was after the incident with Stover. *Id.* The reason that he asked for the transfer the second time was because he thought that another location would be more secure. *Id.*

### 6. Hotline Complaints and Investigation

On July 18, 2007, the day after the eye-spraying incident, the plaintiff called RadioShack's employee hotline twice and made two separate complaints. *Id.* ¶ 23. During the first call, the plaintiff stated that he wanted to report unethical behavior that was going on in the Lewiston, Maine, store. *Id.* ¶ 24. He outlined previous harassment that he had endured from Moore, Brophy, and Stover. Plaintiff's Additional SMF ¶ 144; Ziehm Aff. ¶ 41.

---

[37] I disregard the balance of paragraph 142, which is neither admitted nor supported by the citation given.

Specifically, he claimed that (i) Moore did not allow him to take three days of vacation that had previously been approved, (ii) Moore docked his vacation time even though the plaintiff worked (*i.e.*, charged his vacation time for time that he worked), (iii) when the plaintiff asked Moore about his vacation hours being docked, Moore told him that he would be written up and fired if he did not drop the issue, (iv) Moore told the plaintiff not to tell customers about store discounts, waived activation fees, and store credits, (v) Moore sold a cell phone to a customer at the wrong price and did not include a gift card as he should have, (vi) Moore did not reimburse the plaintiff for his travel expenses when the plaintiff traveled to another store to pick up two cell phones that he had sold to a customer, (vii) the Loss Prevention Department had investigated the plaintiff regarding the sale of four iPods to a customer, and (viii) Stover, a part-time sales associate, had told the plaintiff, "the Jews got what they deserved.  Hitler had a point." Defendant's SMF ¶ 24; Plaintiff's Opposing SMF ¶ 24.

Later that day, the plaintiff called RadioShack's hotline again to make a second report. *Id*. ¶ 25.  During that call, he informed Ashidda Foster that Stover had sprayed him the eyes and he had chemical burns and abrasions.  Plaintiff's Additional SMF ¶ 143; Defendant's Reply SMF ¶ 143.  He also informed Foster that he had called Moore, his store manager, immediately after the incident and told Moore that he needed to go to the hospital, and that Moore had told him that he could not leave the store or he would be fired.  *Id*.  He requested that these matters be investigated and that Moore and Stover be fired.  *Id*.  He also informed Foster that he had contacted Chisholm, who had done nothing about the situation.  *Id*.[38]

---

[38] I disregard paragraph 145 of the plaintiff's statement of additional facts, *see* Plaintiff's Additional SMF ¶ 145, sustaining the defendant's objection on hearsay grounds to citation to a portion of the plaintiff's father's testimony, *see* Defendant's Reply SMF ¶ 145.  The plaintiff's rejoinder that these assertions are not offered for the truth of the matter asserted "but rather to support [] the present sense impression of the Plaintiff[,]" *see* Plaintiff's Local Rule 56(e) Response to Objections Made in Defendant's Reply to Plaintiff's Additional Statement of Material Facts ("Plaintiff's Rule 56(e) Response") (Docket No. 73), ¶ 145, is not well-taken.  To the extent that he means to argue *(continued on next page)*

RadioShack immediately began an investigation into the plaintiff's complaints following the calls to the hotline.  Defendant's SMF ¶ 26; Plaintiff's Opposing SMF ¶ 26.  Over the course of the following two weeks, Ashidda Foster from the RadioShack Employee Relations Department interviewed the plaintiff, Moore, and Chisholm regarding the plaintiff's allegations.  *Id*.  Chisholm also obtained a statement from Stover regarding the eye-spraying incident.  *Id*.  In her written account of her conversation of July 18, 2007, with Chisholm, Foster notes that the plaintiff has "Asberber [sic] syndrome.  It is related to autism.  Stated he is very emotional."  Plaintiff's Additional SMF ¶ 146; Defendant's Reply SMF ¶ 146.[39]

Based on its investigation, RadioShack concluded that Stover had engaged in inappropriate workplace conduct and terminated his employment.  Defendant's SMF ¶ 27; Plaintiff's Opposing SMF ¶ 27.  However, RadioShack was not able to substantiate the plaintiff's allegations regarding unethical conduct.  *Id*.[40]

### 7.  Medical Leave and Vacation

After being sprayed in the eyes, the plaintiff took two days of medical leave, July 18 and 19, 2007, to care for his eyes.  *Id*. ¶ 28.  He then took a week of planned vacation from July 20-27, 2007.  *Id*.  He received a week of vacation pay for that week.  *Id*.

On or about July 30, 2007, the plaintiff and John Ziehm returned from a vacation trip to Virginia.  Plaintiff's Additional SMF ¶ 150; Ziehm Aff. ¶ 46.  They pulled into a parking area on

---

that the assertions, while hearsay, meet the "present sense impression" exception, he does not show that they were overheard by the plaintiff's father "while the [plaintiff] was perceiving the event or condition" described to Foster "or immediately thereafter."  Fed. R. Evid. 803(1).  Paragraph 42 of the plaintiff's affidavit, which he also cites in support of these assertions, *see* Plaintiff's Additional SMF ¶ 145, has been stricken.

[39] I disregard paragraphs 147, 148, and 149 of the plaintiff's statement of additional facts, *see* Plaintiff's Additional SMF ¶¶ 147-49, which rely in part on citation to paragraphs of his affidavit that have been stricken and are unsupported by the remaining materials cited.  I also disregard paragraph 151 on the basis that it is not supported by the citation given.

[40] I disregard the plaintiff's qualification, which is unsupported by the citations supplied to evidence not stricken in response to the Motion To Strike.

the New Hampshire turnpike, and the plaintiff called Chisholm's office in order to discuss his employment situation with him.  *Id.*  At that time, he reached John Hindal in Chisholm's office.  *Id.*  He learned that RadioShack had terminated Stover.  Defendant's SMF ¶ 29; Plaintiff's Opposing SMF ¶ 29.

On July 31, 2007, the plaintiff asked his health-care provider for a medical note excusing him from work because of his stress and anxiety from the spraying incident.  Plaintiff's Additional SMF ¶ 152; Ziehm Aff. ¶ 48.  He did not want to return to work because he did not feel safe as long as Moore was still his manager.  *Id.*  He also felt that his mental health was in great jeopardy if he was required to continue under the management of Moore.  Defendant's SMF ¶ 30; Plaintiff's Opposing SMF ¶ 30.  He did not feel safe because (i) Stover had sprayed him in the eyes with an aerosol, and (ii) Moore was still the store manager.  *Id.*  He did not feel safe with Moore as the store manager because Moore did not allow him to go to the emergency room when Stover sprayed him in the eyes.  *Id.*

The plaintiff's health-care provider gave him a medical note excusing him from work from July 31, 2007, until August 6, 2007.  *Id.* ¶ 31.  After August 6, 2007, the plaintiff did not have a medical reason for not returning to work.  *Id.*[41]

### 8. Termination of Employment

On August 1, 2007, after repeatedly attempting to contact the plaintiff regarding his return to work, Chisholm sent him a letter asking him to contact Chisholm by August 8, 2007, to discuss his return to work.  *Id.* ¶ 32.  The letter informed the plaintiff that if he did not contact Chisholm by August 8, 2007, he would be deemed to have voluntarily resigned his employment

---

[41] I disregard the plaintiff's qualification, which is unsupported by citations to evidence not stricken in response to the Motion To Strike.  While the plaintiff subjectively felt that his mental health was in great jeopardy if he continued to work under Moore, *see* Ziehm Aff. ¶ 48, he adduces no competent evidence that he had "an ongoing medical basis for staying out of work[,]" Plaintiff's Opposing SMF ¶ 31.

with RadioShack.  *Id.*  Chisholm stated in that letter, "I have made several attempts to contact you and we still have not heard from you regarding your employment."  Plaintiff's Additional SMF ¶ 153; Defendant's Reply SMF ¶ 153.  In fact, Chisholm knew that the plaintiff had spoken with Hindal at Chisholm's office prior to August 1, 2007.  *Id.*  Additionally, the plaintiff had faxed a copy of his medical out-of-work slip to Chisholm's office indicating that he would be out of work until August 6, 2007.  *Id.*[42]

The plaintiff received the August 1, 2007, letter from Chisholm.  Defendant's SMF ¶ 33; Plaintiff's Opposing SMF ¶ 33.  He did not contact Chisholm after he received the letter. Defendant's SMF ¶ 33; Chisholm Dep. at 45-46.  The plaintiff was scheduled to return to work on August 8, 2007.  Defendant's SMF ¶ 34; Ziehm Dep. at 98.  He did not report to work on that date.  *Id.*  He voluntarily resigned from his employment at RadioShack.  Defendant's SMF ¶ 34; Ziehm Dep. at 99. [43]

### 9.  Workplace Incidents

### a.  Vacation Request

Although the plaintiff initially thought that his vacation time had been docked due to an electronic notation in the computer system, he was allowed to use that vacation time at a future date.  Defendant's SMF ¶ 39; Plaintiff's Opposing SMF ¶ 39.  He does not know why Moore would not allow him to take the vacation time that previously had been approved.  *Id.* ¶ 40.  He does not know whether Moore ever told any other employees that they could not take time off

---

[42] The defendant qualifies this statement, asserting that Chisholm knew that the plaintiff had spoken with Hindal long before he sent the August 1, 2007, letter and that Chisholm tried to call the plaintiff after the plaintiff had spoken with Hindal.  *See* Defendant's Reply SMF ¶ 153; Deposition of Michael Chisholm ("Chisholm Dep.") (Docket No. 83-7), attached to Defendant's SMF, at 41-42.

[43] I disregard the plaintiff's qualification, which is unsupported by citations to evidence not stricken in response to the Motion To Strike.  While the plaintiff subjectively felt that his mental health was in great jeopardy if he continued to work under Moore, *see* Ziehm Aff. ¶ 48, he adduces no competent evidence that he had "an ongoing medical basis for staying out of work[,]" Plaintiff's Opposing SMF ¶ 34.

that had previously been requested. *Id*. He believes that the reason he was denied the time off was because of a scheduling issue and because of a need to do mandatory inventory. *Id*. ¶ 41.

### b. Store Discounts, Waived Activation Fees, Credits, and Gift Cards

On several occasions, the plaintiff was told by Moore not to tell customers about store discounts, waived activation fees, and credits. Plaintiff's Additional SMF ¶ 106; Defendant's Reply SMF ¶ 106. The plaintiff does not know if Moore instructed other employees not to tell customers about discounts, waived activation fees, and credits. Defendant's SMF ¶ 42; Plaintiff's Opposing SMF ¶ 42. The plaintiff believes that Moore failed to give a customer a gift card because he wanted to increase the store's income. *Id*. ¶ 43. The plaintiff does not know whether Moore told other sales associates not to give gift cards to customers. *Id*.

### c. Mileage Reimbursement

In the spring of 2007, the plaintiff volunteered to drive to Biddeford to pick up two cell phones for a customer. *Id*. ¶ 44. The plaintiff was not asked, or required, to drive to Biddeford to pick up the cell phones and was told in advance that he would not be reimbursed for his mileage if he chose to do so. *Id*. RadioShack paid him his regular hourly rate for driving to Biddeford to pick up the cell phones, even though he was not working during that time, and RadioShack paid him a substantial commission for the sale of the two cell phones. *Id*.

Moore told the plaintiff that he would not receive mileage when he went to pick up the cell phones because he had not been asked to go. *Id*. ¶ 45. Chisholm also told the plaintiff that he would not be paid for the mileage because he had not been asked to go and pick up the phones. *Id*.

The plaintiff is not aware of any other sales associates who were paid mileage for travel when they were not required to make the trip. *Id*. ¶ 46. The plaintiff did not receive mileage

36

reimbursement for mandatory meetings.  *Id.* ¶ 47.  He does not know when this happened or how often it happened.  *Id.*  He does not know whether he submitted a mileage reimbursement request form for his travel to mandatory meetings.  *Id.* ¶ 48.  He does not know whether he was supposed to submit a mileage reimbursement request form for his travel to mandatory meetings.  *Id.*  He did not follow up with anyone to ask about mileage reimbursement.  *Id.*  He did not complain to anybody about not receiving mileage reimbursement for mandatory meetings.  *Id.*

In order to receive mileage reimbursement, employees are responsible for filling out and submitting an expense reimbursement request form.  *Id.* ¶ 49.  The plaintiff believes that he did not receive his mileage reimbursement because he did not submit the mileage reimbursement form.  *Id.*  He did not understand that he needed to submit a mileage reimbursement form because Moore had never told him that he needed to do so.  *Id.*[44]

The plaintiff does not know whether there were any other sales associates who did not receive mileage reimbursement for mandatory meetings.  *Id.* ¶ 50.  He does not know if any other sales associates submitted mileage reimbursement forms.  *Id.*

### d.  Anti-Semitic Comments

In the spring of 2007, Stover told the plaintiff that "Hitler had a point."  *Id.* ¶ 51.  The plaintiff believed that the comment was directed at him because he has Jewish relatives.  *Id.*  The plaintiff told Moore about Stover's comment regarding Hitler.  *Id.* ¶ 52.  The plaintiff does not know if Moore spoke with Stover about the comment or did anything in response to learning about it.  *Id.*  After the plaintiff reported this incident to Moore, Stover did not make any other anti-Semitic remarks to the plaintiff or in his presence.  *Id.*

---

[44] My recitation incorporates the plaintiff's qualification.

**e.  Diverted Sales Commissions**

On June 9, 2007, the plaintiff noticed an alteration to a payroll record.  Defendant's SMF ¶ 53; Ziehm Dep. at 124-25.  He does not know when the sales record was altered.  Defendant's SMF ¶ 53; Ziehm Dep. at 194.  He does not know who altered it.  *Id*.  He does not know what sales period was covered by the document that was altered.  *Id*.  He does not know who was affected by the alterations or adjustment or why they were made.  Defendant's SMF ¶ 53; Ziehm Dep. at 195.[45]

The plaintiff speculates that Moore altered the commission report, and that he did so for personal gain.  Defendant's SMF ¶ 56; Plaintiff's Opposing SMF ¶ 56.  When the plaintiff worked at RadioShack, he would review his payroll report at the end of the pay period and initial it to confirm that his hours and commissions were accurate.  *Id*. ¶ 57.[46]

Although the plaintiff did not sign the payroll report for the period ending August 12, 2007, he does not have any reason to believe that the information on the payroll report is inaccurate.  Defendant's SMF ¶ 59; Ziehm Dep. at 161.[47]  Although he did not sign the payroll

---

[45] I disregard the plaintiff's qualification of paragraph 53, which is repeated in paragraph 123 of his own statement of additional facts, *see* Plaintiff's Opposing SMF ¶ 53; Plaintiff's Additional SMF ¶ 123, sustaining the defendant's objection on hearsay grounds, *see* Defendant's Reply SMF ¶ 123.  The plaintiff's rejoinder that the statement is not offered for the truth of the matter asserted, *see* Plaintiff's Rule 56(e) Response ¶ 123, is not well-taken.  He also argues that the 84-page payroll document on which the statement is based qualifies as an admission of a party-opponent, *see id*.; Payroll Reports (Docket No. 46-1), attached to Plaintiff's Opposing SMF.  However, he makes no showing that it so qualifies, *see id*.; Fed. R. Evid. 801(d)(2).  I alternatively disregard the statement on the basis of failure to conform with Local Rule 56(f), the plaintiff having failed to point to specific entries within the voluminous document on which he relies.  *See* Loc. R. 56(f) ("An assertion of fact set forth in a statement of material facts shall be followed by a citation to the specific page or paragraph of identified record material supporting the assertion.").

[46] I disregard paragraph 124 of the Plaintiff's Additional SMF, *see* Plaintiff's Additional SMF ¶ 124, the substance of which is repeated in his qualifications of paragraphs 54, 57, 58, and 63, *see* Plaintiff's Opposing SMF ¶¶ 54, 57, 58, and 63, sustaining the defendant's objection on hearsay grounds, *see* Defendant's Reply SMF ¶ 124.  The plaintiff's rejoinder that the statements are not offered for the truth of the matter asserted "but rather to support the present sense impression of the Plaintiff[,]" Plaintiff's Rule 56(e) Response ¶ 124, is not well-taken.  To the extent that he means to argue that the statements, while hearsay, meet the "present sense impression" exception, he does not show that they were made to the plaintiff's father "while the [plaintiff] was perceiving the event or condition, or immediately thereafter."  Fed. R. Evid. 803(1).

[47] I disregard the plaintiff's denial of paragraph 59.  *See* Plaintiff's Opposing SMF ¶ 59.  For reasons discussed in sustaining the defendant's objections to paragraphs 123 and 124 of his statement of additional facts, his reliance on *(continued on next page)*

38

report for the periods ending March 30, 2007, May 18, 2007, and July 20, 2007, he does not have any reason to believe that the information on the payroll report is inaccurate. Defendant's SMF ¶¶ 60-62; Plaintiff's Opposing SMF ¶¶ 60-62.

The plaintiff regularly checked his sales records to make sure that they were accurate. *Id.* ¶ 63. He checked the sales records on a weekly basis. *Id.* He did find discrepancies, where he thought that he was not being paid correctly, but he did not raise the issue with anyone at RadioShack. *Id.* He thought that Moore was manipulating the system for personal gain. *Id.*[48]

The plaintiff did not receive certain sales commissions for sales of cellular phones, Answer Plus credit cards, and various accessories. *Id.* ¶ 67. He does not know when this happened or how often it happened. *Id.*[49] The plaintiff did not report the loss of commissions to anyone at RadioShack. *Id.* ¶ 68. He does not know why he was not receiving certain sales commissions. *Id.* He does not know whether it was intentional or not. *Id.* He does not know if there were any other sales associates who were not receiving sales commissions. *Id.*[50]

When a sales commission that would be credited and paid to a sales associate is credited to a store manager, such as Moore, it remains undisbursed and falls to the bottom line of store receipts. Plaintiff's Additional SMF ¶ 125; Defendant's Reply SMF ¶ 125. A store manager's bonus is based on the net profits of his or her store and is determined by RadioShack's corporate

---

citation to a payroll document and to his father's deposition testimony is misplaced. While he also cites a portion of Chisholm's deposition testimony, *see id.*, that testimony does not support his denial.

[48] I disregard the plaintiff's qualification of paragraph 63. *See* Plaintiff's Opposing SMF ¶ 63. For reasons discussed in sustaining the defendant's objections to paragraphs 123 and 124 of his statement of additional facts, his reliance on citation to a payroll document and to his father's deposition testimony is misplaced. He also cites paragraphs 6 and 12 of his affidavit, *see id.*; however, the portions not stricken in response to the Motion To Strike do not support his assertions.

[49] I disregard the plaintiff's qualification of paragraph 67. *See* Plaintiff's Opposing SMF ¶ 67. For reasons discussed in sustaining the defendant's objection to paragraph 123 of his statement of additional facts, his reliance on citation to a payroll document is misplaced.

[50] I disregard the plaintiff's qualification of paragraph 68. *See* Plaintiff's Opposing SMF ¶ 68. For reasons discussed in sustaining the defendant's objection to paragraph 124 of his statement of additional facts, his reliance on citation to his father's deposition testimony is misplaced. He also cites paragraphs 6, 12, and 48 of his affidavit, *see id.*; however, the portions not stricken in response to the Motion To Strike do not support his assertions.

39

offices.  *Id*. ¶ 126.  At his deposition, Moore stated that higher store sales are in no way, shape, or manner reflected in higher compensation for him and that he is exclusively paid in salary and on "spiffs."  *Id*. ¶ 127.

### f. Sale of Telephones at Full Price

Moore berated the plaintiff for selling phones at a sale price rather than the full price. Plaintiff's Additional SMF ¶ 108; Defendant's Reply SMF ¶ 108.  The plaintiff believes that Moore was telling him to sell the telephones at full price solely because he wanted to increase the sales volume for the store.  Defendant's SMF ¶ 71; Plaintiff's Opposing SMF ¶ 71.  The plaintiff does not know whether Moore berated any of the other sales associates for refusing to sell telephones at full price.  *Id*. ¶ 72.

### g. Investigation by Loss Prevention

In December 2006, the Loss Prevention Department investigated the loss of four iPods. *Id*. ¶ 73.  No disciplinary action was taken against the plaintiff as a result of the investigation.  *Id*. The plaintiff does not know if any other sales associates were investigated at that time.  *Id*.  He does not know if any other employees were disciplined as a result of the investigation.  *Id*.

During the loss prevention investigation, Regional Loss Prevention Manager Mark Brophy threatened the plaintiff with termination.  Plaintiff's Additional SMF ¶ 128; Defendant's Reply SMF ¶ 128.  Brophy told the plaintiff that, if he refused to answer his questions, he would be written up or terminated.  Defendant's SMF ¶ 74; Plaintiff's Opposing SMF ¶ 74.  The plaintiff was never actually questioned about the thefts.  *Id*.  The plaintiff was never disciplined as a result of the investigation or his failure or refusal to participate in it.  *Id*. ¶ 75.[51]  The plaintiff does not know whether any other employees were questioned about the loss or disciplined for it.

---

[51] The plaintiff qualifies this statement, asserting that he was threatened with discipline and intimidated although never formally disciplined.  *See* Plaintiff's Opposing SMF ¶ 75; Ziehm Aff. ¶ 19.

*Id*. ¶ 76. The plaintiff does not believe that Brophy wanted to question him for any reason other than to investigate the loss. *Id*. ¶ 77.

Brophy originally suspected the plaintiff of stealing a digital scanner and then shifted his investigation to Dave Giasson, another sales associate. *Id*. ¶ 78. Ultimately, Brophy discovered that the digital scanner had not been stolen but merely lost in repair. *Id*. Brophy was targeting the plaintiff for investigation. *Id*. ¶ 79. He stopped targeting him on June 8, 2007. *Id*. ¶ 79. The plaintiff speculated that perhaps Brophy was investigating him because he had questioned whether Brophy was doing his job. *Id*. ¶ 80.[52]

The plaintiff was caused such extreme stress and anxiety from the loss prevention investigation that he considered leaving RadioShack. Plaintiff's Additional SMF ¶ 129; Ziehm Aff. ¶ 29. He told Moore that he thought it might be better if he just left the company because of the toll the investigation was taking on his stress and anxiety level. *Id*. Moore told him that it would be a bad idea to leave because, if he left, RadioShack would have him prosecuted, and that would result in his conviction as a felon. Plaintiff's Additional SMF ¶ 130; Ziehm Aff. ¶ 30.

### h. Training, Advancement

Moore provided more training to Giasson and Stover with regard to store closing procedures. Defendant's ¶ 86; Plaintiff's Opposing SMF ¶ 86. Moore told the plaintiff that he was not mature enough to close the store. *Id*. There was no additional compensation associated with being able to close the store. *Id*. It is merely an additional responsibility. *Id*. The plaintiff had store closing responsibilities. *Id*. Stover was not permitted to close the store. *Id*.[53]

---

[52] My recitation incorporates the plaintiff's qualification.
[53] My recitation incorporates the plaintiff's qualification, to the extent that it is supported by citation to evidence not stricken in response to the Motion To Strike.

The plaintiff never applied for another position within RadioShack. Defendant's SMF ¶ 87; Ziehm Dep. at 107. During his employment with RadioShack, he was not aware of any openings for management. Defendant's SMF ¶ 87; Ziehm Dep. at 108. He was never denied a management position. Defendant's SMF ¶ 87; Chisholm Aff. ¶ 12. Moore told the plaintiff he did not want an assistant manager because his salary would likely decrease. Plaintiff's Additional SMF ¶ 120; Ziehm Aff. ¶ 26.[54]

At one point in time, Moore offered the plaintiff management training, and then retracted the offer. Defendant's SMF ¶ 88; Plaintiff's Opposing SMF ¶ 88. The plaintiff does not know why Moore retracted the offer. *Id.* He believes that he was not given management training because it would impact Moore's compensation. *Id.* The plaintiff does not know of any other sales associates who were offered management training. *Id.*

### i. Harassment

On an ongoing basis, Moore treated the plaintiff in a harassing, bullying, condescending, controlling, and intimidating manner. Plaintiff's Additional SMF ¶ 103; Ziehm Aff. ¶ 12. The plaintiff was afraid to report Moore because he was terrified of him. Plaintiff's Additional SMF ¶ 117; Ziehm Aff. ¶ 24. This fear was increased by the control Moore had over both his employment and his home life, serving as his landlord. *Id.* The plaintiff also feared that if he complained, he would lose his job. *Id.* As Moore had stated, his words would mean more to RadioShack than those of the plaintiff. *Id.*

The plaintiff was harassed by Brophy, the loss prevention manager. Defendant's SMF ¶ 82; Plaintiff's Opposing SMF ¶ 82. Brophy harassed him about missing items and internal

---

[54] I omit paragraph 118, *see* Plaintiff's Additional SMF ¶ 118, sustaining the defendant's objection that it is not supported by an appropriate record citation, *see* Defendant's Reply SMF ¶ 118. The plaintiff cites to an 84-page time sheet printout, providing no pinpoint citations. *See* Plaintiff's Additional SMF ¶ 118; Payroll Reports; Loc. R. 56(f).

store thefts.  *Id.*  The plaintiff does not know why Brophy was harassing him about the missing items or the internal store thefts.  *Id.* ¶ 83.  He does not know if any other sales associates were harassed by Brophy.  *Id.*  The plaintiff never complained to Chisholm about Brophy's harassment or being harassed on the basis of disability.  *Id.* ¶ 85.[55]

### 10.  Statute of Limitations

The plaintiff first believed that RadioShack was discriminating against him because of his Asperger's Syndrome at some point between May 1, 2007, and June 1, 2007.  *Id.* ¶ 91.  He did not file his charge of discrimination with the Maine Human Rights Commission ("MHRC") until January 25, 2008.  *Id.*[56]

### III.  Discussion

The plaintiff alleges that, in violation of both the MHRA and the ADA, the defendant took adverse actions against him on the basis of his disability, Asperger's Syndrome, and wrongfully denied his request for reasonable accommodation.  *See* Plaintiff, Joseph T. Ziehm's, Opposition to Defendant's Motion for Summary Judgment ("Plaintiff's S/J Opposition") (Docket No. 45) at 1; Complaint (Docket No. 1-2), Exh. A to Notice of Removal (Docket No. 1).

The defendant seeks summary judgment as to all claims against it on grounds, *inter alia*, that (i) the plaintiff raises no triable issue that he has a "disability" within the meaning of the ADA, *see* Defendant's S/J Motion at 7-8, (ii) his MHRA claims are barred by the statute of limitations, *see id.* at 28-29, (iii) the defendant took no adverse employment action against him, including constructively discharging him, *see id.* at 8-10, and, (iv) in any event, any action was

---

[55] The plaintiff qualifies this statement, asserting, *inter alia*, that he was afraid to report Moore because he was terrified of him and did not think RadioShack would believe his word over that of Moore.  *See* Plaintiff's Opposing SMF ¶ 80; Ziehm Aff. ¶ 24.  I disregard the balance of the qualification, which is unsupported by the citation given

[56] The plaintiff qualifies this statement, asserting that his charge was mailed to the MHRC on January 25, 2008, but was filed by the MHRC on January 28, 2008.  Plaintiff's Opposing SMF ¶ 92; Ziehm Aff. ¶ 8.

not based on disability, *see id.* at 10-11.  For the reasons that follow, I conclude, and recommend that the court find, that the defendant is entitled to summary judgment as to:

1.      All ADA claims on the ground that the plaintiff fails to raise a triable issue that he has a "disability" for purposes of the ADA.

2.      All MHRA claims except that of constructive discharge on the ground that they are time-barred.

3.      The MHRA claim of constructive discharge on the ground that the plaintiff fails to raise a triable issue that he was constructively discharged on the basis of his disability.

### A.  ADA Claims

The ADA, as in effect during the time of the conduct of which the plaintiff complains, proscribed discrimination by a covered entity "against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a) (2007).[57]

"Disability" was defined as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment."  *Id.* § 12102(2) (2007).  In turn, EEOC regulations define "major life activities" as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working," and "substantially limits" as  "[u]nable to perform a major life activity that the average person in the

---

[57] Congress amended the ADA effective January 1, 2009, through the Americans with Disabilities Amendments Act of 2008 ("ADAAA").  *See Strolberg v. United States Marshals Serv.*, No. CV-03-04-S-DOC, 2010 WL 1266274, at *2 (D. Idaho Mar. 25, 2010).  The plaintiff does not argue that the ADAAA applies retroactively to the conduct here at issue.  *See* Plaintiff's S/J Opposition.  In any event, the ADAAA has been held not to apply retroactively to pre-amendment conduct.  *See Strolberg*, 2010 WL 1266274, at *3.

general population can perform" or "[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity."  29 C.F.R. § 1630.2(i) & (j).  "A significant restriction does not mean a 'mere difference.'"  *Calef v. Gillette Co.*, 322 F.3d 75, 85 (1st Cir. 2003) (citation omitted).

The plaintiff claims that his Asperger's Syndrome substantially limits him in the major life activity of social interaction skills.  *See* Plaintiff's S/J Opposition at 11.  As a threshold matter, the First Circuit has expressed doubt that the "ability to get along with others," a phrase that it used interchangeably with the phrase "interacting with others," qualifies as a "major life activity" for purposes of the ADA.  *Soileau v. Guilford of Me., Inc.*, 105 F.3d 12, 15 (1st Cir. 1997) ("The concept of 'ability to get along with others' is remarkably elastic, perhaps so much so as to make it unworkable as a definition.  While such an ability is a skill to be prized, it is different in kind from breathing or walking, two exemplars which are used in the regulations. Further, whether a person has such an ability may be a matter of subjective judgment; and the ability may or may not exist depending on context.").

In any event, in this case, as in *Soileau*, "even assuming, *dubitante*, that a colorable claim may be made that 'ability to get along with others' is or may be (on specific facts) a major life activity under the ADA, the evidence here does not show any substantial limitation."  *Id*.  The plaintiff performed well as a sales associate, *see* Defendant's SMF ¶ 8; Plaintiff's Opposing SMF ¶ 8, a position that inherently requires social interaction.  He had good relationships with his mother, his fiancée, and his co-workers at RadioShack.  *See id*. ¶ 17; Moore Dep. at 25-26.  He also initially got along with Moore.  *See* Defendant's SMF ¶ 15; Ziehm Dep. at 48.  While he

45

adduces evidence that his relationship with Moore deteriorated to the point that he did not feel safe continuing to work under his direction and management and became terrified of him, *see* Plaintiff's Additional SMF ¶ 152; Ziehm Aff. ¶ 48, he falls short of generating a triable issue that he was significantly limited in getting along, or interacting, with others, *see Soileau*, 105 F.3d at 15-16 ("The evidence does not establish that Soileau had particular difficulty in interacting with others, except for his supervisor.  Impairment is to be measured in relation to normalcy, or, in any event, to what the average person does.").[58]

Cases on which the plaintiff relies do not help him.  *See* Plaintiff's S/J Opposition at 10-11 (citing *Jacques v. DiMarzio, Inc.*, 386 F.3d 192 (2d Cir. 2004), and *Jakubowski v. Christ Hospital*, No. 1:08-CV-00141, 2009 WL 2407766 (S.D. Ohio Aug. 3, 2009)).  In *Jacques*, the United States Court of Appeals for the Second Circuit recognized that "interacting with others" constituted a major life activity for purposes of the ADA and that autism was among conditions that could cause substantial limitation in that major life activity.  *See Jacques*, 386 F.3d at 203-04.  However, it also held:

> [A] plaintiff is 'substantially limited' in 'interacting with others' when the mental or physical impairment severely limits the fundamental ability to communicate with others.  This standard is satisfied when the impairment severely limits the plaintiff's ability to connect with others, *i.e.*, to initiate contact with other people and respond to them, or to go among other people – at the most basic level of these activities.  The standard is not satisfied by a plaintiff whose basic ability to communicate with others is not substantially limited but whose communication is inappropriate, ineffective, or unsuccessful.

*Id*. at 203.  The plaintiff adduces no evidence that his ability to connect with others was impaired to that degree.

---

[58] The plaintiff also had difficulty getting along with his father.  *See* Defendant's SMF ¶ 15; Ziehm Dep. at 48-49.  However, his father was verbally abusive, drank, and said unkind things about his intelligence.  *See* Defendant's SMF ¶ 16; Plaintiff's Opposing SMF ¶ 16.  An inability to get along with such a parent is not indicative of a substantial limitation in ability to get along with others.  *See Soileau*, 105 F.3d at 16 ("Soileau claims he had to leave pubs and stores when they became crowded.  But there is nothing extraordinary about preferring uncrowded places.").

While, in *Jakubowski*, the United States District Court for the Southern District of Ohio found that there was no genuine dispute that the plaintiff, a physician with Asperger's Syndrome, "had serious and ongoing limitations with the major life activity of social interaction skills[,]" *Jakubowski*, 2009 WL 2407766, at *9, the physician-plaintiff had a long-standing history of serious communication difficulties, severe enough to jeopardize his medical career, having (i) received negative evaluations during a supervised clinical training program identifying communication problems as his primary deficiency, (ii) been criticized by a supervising physician during a residency orientation program on the basis that nurses did not know what he was trying to relate, he had difficulty even answering a phone call and taking a message, and he was often harsh and short on the phone to nurses and others, and (iii) been documented by two other supervising physicians to have made a handful of mistakes relating to communication problems, *see id*. at *1-*2.   In this case, the plaintiff adduces no such specific evidence of pervasive communication difficulties.[59]

The plaintiff's inability to generate a triable issue as to whether he qualifies as an individual with a "disability" is fatal to his ADA claims.  Accordingly, I recommend that the defendant's motion for summary judgment as to all claims brought pursuant to the ADA be granted.

---

[59] The plaintiff's evidence of the "typical" impact of Asperger's Syndrome on social interaction, *see, e.g.*, Plaintiff's Additional SMF ¶ 95; Bridgman Dep. at 95, does not stave off summary judgment.  What matters is the condition's impact on *his* social interaction skills.  *See, e.g.*, *Lessard v. Osram Sylvania, Inc*., 175 F.3d 193, 197 (1st Cir. 1999) ("Under the ADA, not all impairments lead to protection.  Only those impairments which substantially limit a major life activity do so.") (citation omitted); *Grizzle v. Macon County, Ga*., Civil Action No. 5:08-CV-164(CAR), 2009 WL 2611319, at *8 (M.D. Ga. Aug. 20, 2009) ("[T]he majority of Plaintiff's evidence . . . rests, not on his own experiences, but on textbook explications of the types of symptoms people with his impairment might experience, failing to show Plaintiff's own symptoms – i.e., his own experience of substantial limitation.") (citation and internal punctuation omitted).

## B.  MHRA Statute of Limitations

With respect to the plaintiff's claims pursuant to the MHRA, the defendant argues, *inter alia*, that he failed to file a charge of discrimination with the MHRC "not more than 6 months after the alleged act of unlawful discrimination[,]" as required by the version of the relevant statute of limitations, 5 M.R.S.A. § 4611, then in effect.  *See* Defendant's S/J Motion at 28-29.  The defendant reasons that because the plaintiff first believed that RadioShack was discriminating against him on the basis of his disability sometime between May 1, 2007, and June 1, 2007, he should have filed his charge of discrimination by December 1, 2007.  *See id.* at 29.

The plaintiff concedes that his MHRC charge was filed on or about January 28, 2008, and that, accordingly, he is entitled to recover only for acts of discrimination occurring after July 28, 2007.  *See* Plaintiff's S/J Opposition at 29.  However, he states that the important discriminatory acts giving rise to his claim are the defendant's failure to reasonably accommodate his disability or to remedy the discriminatory and hostile workplace created by Moore and its eventual termination of his employment.  *See id.*  He adds that because a failure to accommodate is an adverse action, the July 28 limitation does not bar his claim.  *See id.*

The defendant rejoins that the clock began running on the plaintiff's claim of failure to accommodate on July 18, 2007, when he originally asked Chisholm for a transfer, and Chisholm denied his request.  *See* Reply to Plaintiff's Opposition to Defendant RadioShack Corporation's Motion for Summary Judgment ("Defendant's S/J Reply") (Docket No. 64) at 11-12.  It argues that a plaintiff's request for reconsideration of an employment decision and an employer's adherence to that decision do not create a "continuing violation" for statute of limitation purposes.  *See id.*

48

Crediting all of the plaintiff's cognizable evidence, the only incidents of which he complains that transpired after July 28, 2007, are (i) RadioShack's ongoing refusal, following Chisholm's July 18, 2007, denial of his request, to transfer him to a different store or fire Moore, *see, e.g.*, Plaintiff's Additional SMF ¶ 138; Ziehm Aff. ¶ 36; Plaintiff's Additional SMF ¶ 143; Defendant's Reply SMF ¶ 143; Defendant's SMF ¶¶ 26-27; Plaintiff's Opposing SMF ¶¶ 26-27, and (ii) his alleged constructive discharge on August 8, 2007, following his receipt of Chisholm's August 1, 2007, letter, *see* Defendant's SMF ¶¶ 32-33; Plaintiff's Opposing SMF ¶¶ 32-33; Plaintiff's Additional SMF ¶ 153; Defendant's Reply SMF ¶ 153; Defendant's SMF ¶ 34; Ziehm Dep. at 98.

There is no dispute that, once the plaintiff finished his shift at RadioShack on July 17, 2007, the day of the eye-spraying incident, he never returned to the workplace. *See* Defendant's SMF ¶¶ 28, 31, 33; Plaintiff's Opposing SMF ¶¶ 28, 31, 33; Defendant's SMF ¶ 34; Ziehm Dep. at 98. Thus, to the extent that he complains of individual adverse employment actions occurring there, including Brophy's conduct during the loss prevention investigation and Moore's alleged continuous harassment (for example, docking his vacation pay, berating him for honoring discounts and waiving activation fees, failing to reimburse his mileage costs, diverting commissions, failing to train or promote him, and failing to permit him to leave work to attend to his eyes following the eye-spraying incident), his MHRA action is time-barred.

In addition, to the extent that the plaintiff complains that he endured a hostile work environment, his MHRA action likewise is time-barred. He identifies no act occurring after July 28, 2007, that can be said to have contributed to the alleged hostile work environment, rendering that claim timely. *Compare, e.g., National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002) ("Provided that an act contributing to . . . [a hostile work environment] claim occurs

49

within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.") (footnote omitted); *LePage v. Bath Iron Works Corp.*, 2006 ME 130, ¶¶ 10-16, 909 A.2d 629, 633-35 (applying *Morgan* in assessing whether a continuing violation tolled the six-month MHRA statute of limitations). The two acts occurring subsequent to July 28, 2007, namely, the continued denial of the plaintiff's request for accommodation and his alleged constructive discharge, were "discrete" incidents that were not part and parcel of the alleged hostile work environment created by Moore, Brophy, and Stover and hence cannot serve to render his hostile work environment claim timely. *See Morgan*, 536 U.S. at 114-15 (employment termination a discrete act); *Coleman v. Cook County*, No. 09 CV 739, 2010 WL 725322, at *4 (N.D. Ill. Feb. 25, 2010) (failure to accommodate disability a discrete act).

The plaintiff's claim of failure to accommodate his disability also is time-barred. To the extent that he relies, for statute of limitation purposes, on RadioShack's continuing refusal beyond July 28, 2007, to honor his request for accommodation or otherwise remedy his alleged hostile work environment, *see, e.g.*, Plaintiff's S/J Opposition at 29, the defendant correctly notes that an ongoing such refusal is not tantamount to a "continuing violation" and does not render such a claim timely, *see, e.g.*, Defendant's S/J Reply at 12; *Soignier v. American Bd. of Plastic Surgery*, 92 F.3d 547, 553 (7th Cir. 1996) (rejecting plaintiff's contention that statute of limitations should have been tolled during his internal appeal of denial of requested accommodation of disability; "Rather than an independent wrong, the denial of the surgeon's appeal merely confirmed the Board's earlier decisions that sufficient accommodations had already been made for his disabilities and that he would not be retested."); *LePage*, 2006 ME 130, ¶ 15, 909 A.2d at 634-35 (six-month MHRC statute of limitations began to run from date

employee was initially notified of adverse decision and was not tolled by employer's willingness to reconsider that decision).

I reach a different conclusion with respect to the plaintiff's final claim, of constructive discharge.  That claim was timely raised in his MHRC charge of discrimination within six months of August 8, 2007, the date on which he failed to report to work and hence was deemed to have voluntarily resigned.  *See* MHRC Charge of Discrimination (Docket No. 62-6), attached to Motion To Strike; *Cosme-Pérez v. Municipality of Juana Díaz*, 585 F. Supp.2d 229, 239-40 (D.P.R. 2008) (constructive discharge claim was timely filed when brought within requisite time period of date of alleged constructive discharge); *Baranowski v. Waters*, Civil Action No. 05-1379, 2008 WL 4000406, at *15 (W.D. Pa. Aug. 25, 2008), *aff'd*, No. 08-3987, 2010 WL 925916 (3d Cir. Mar. 16, 2010) ("the running of the limitations period for constructive discharge would begin when the employee's decision to resign is communicated to the employer").

For the foregoing reasons, I recommend that, as to all of the plaintiff's MHRA claims, save that of constructive discharge, the court grant the defendant's motion for summary judgment on the ground that they are time-barred pursuant to 5 M.R.S.A. § 4611 as in effect during the relevant time.

### C.  Merits: Constructive Discharge Claim

With respect to claims of constructive discharge, the Law Court has followed federal precedent, holding that "'discharge' includes the situation where, although not formally discharged by the employer, the employee has no reasonable alternative to resignation because of intolerable working conditions."  *King v. Bangor Fed. Credit Union*, 611 A.2d 80, 82 (Me. 1992).  "The test is whether a reasonable person facing such unpleasant conditions would feel compelled to resign."  *Id*.

51

"In order to prove a constructive discharge, a plaintiff must show that the work environment triggering the departure was more severe and pervasive than the minimum required to prove a hostile working environment." *Paquin v. MBNA Mktg. Sys., Inc*., 233 F. Supp.2d 58, 68 (D. Me. 2002), *amended on other grounds*, 2002 WL 31687598 (D. Me. Dec. 2, 2002). "The standard is an objective one; it cannot be triggered solely by the employee's subjective beliefs, no matter how sincerely held." *Id*. (citation and internal quotation marks omitted).

In turn, "[t]o succeed on a hostile work environment claim, a plaintiff must show that her workplace was permeated with discriminatory intimidation, ridicule, and insult that was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment." *Ríos-Jiménez v. Principi*, 520 F.3d 31, 43 (1st Cir. 2008) (citations and internal punctuation omitted). "Among the factors relevant to this inquiry are the severity of the conduct, its frequency, and whether it unreasonably interfered with the victim's work performance." *Id*. (citations and internal quotation marks omitted). "[T]he federal employment discrimination laws do not establish a general civility code for the workplace." *Id*. (citation and internal quotation marks omitted).

As the defendant argues, *see* Defendant's S/J Motion at 10; Defendant's S/J Reply at 4-5, the plaintiff fails to generate a triable issue that the conduct of which he complains was more severe or pervasive than the minimum required to prove a hostile work environment or that any such discharge was based on his disability.[60]

---

[60] The plaintiff suggests that, as a general proposition, the court should hesitate to resolve constructive discharge claims on summary judgment. *See* Plaintiff's S/J Opposition at 13 & n.3, 23-24. As the defendant observes, *see* Defendant's S/J Reply at 4, this court has declined to adopt such an approach, *see, e.g., Scarborough v. Nestle Waters N. Am., Inc*., Civil No. 07-193-P-S, 2008 WL 4787573, at *11 (D. Me. Oct. 30, 2008) (rec. dec., *aff'd* Dec. 15, 2008).

The plaintiff himself testified that he did not want to return to work because he did not feel safe as long as Moore was still his manager, and he did not feel safe with Moore as the store manager because Moore did not allow him to go to the emergency room when Stover sprayed him in the eyes.  *See* Defendant's SMF ¶ 30; Plaintiff's Opposing SMF ¶ 30.  He fails to present any admissible evidence that, with regard to this unfortunate one-time incident, the conduct of either Stover or Moore was motivated by disability-based discriminatory animus.  To the contrary, he has attributed Stover's spraying of aerosol into his face to Stover's Opposition Defiance Disorder and Moore's refusal to permit him to leave the store to a combination of RadioShack's policy that no one under 17, such as Stover, could close the store and Moore's unwillingness to come in and cover for the plaintiff because he was drunk at a bar with a date. *See id.* ¶¶ 19, 21; Plaintiff's Additional SMF ¶ 135; Defendant's Reply SMF ¶ 135.

Even viewing the eye-spraying incident as the straw that broke the camel's back, in terms of the plaintiff's willingness to continue in RadioShack's employment after he was subjected to ongoing harassment, intimidation, and bullying, primarily at the hands of Moore, he does not make out a triable claim of constructive discharge.  As an initial matter, several of the specific incidents of which he complains are ordinary work stresses that cannot be said, even collectively, to have objectively contributed to the creation of intolerable work environment, such as the denial of preferred vacation time, refusal of mileage reimbursement, particularly in circumstances in which an employee was warned in one instance that reimbursement would not be made and did not inquire as to how reimbursement for which he might be eligible should be accomplished, and being required to participate in a loss prevention investigation, even on pain of possible discharge for non-participation.  While I appreciate that the latter caused the plaintiff such severe stress that he considered resigning at that time, *see* Plaintiff's Additional SMF ¶ 129;

Ziehm Aff. ¶ 29, it cannot fairly objectively be characterized as an intolerable working condition in a retail establishment.[61]

In any event, even assuming *arguendo* that the collective conduct of which the plaintiff complains can be said, as an objective matter, to have rendered the Lewiston RadioShack store an intolerable workplace, the plaintiff fails to generate a triable issue that the conduct precipitating his alleged constructive discharge stemmed from disability-based discriminatory animus. *See Principi*, 520 F.3d at 43 (a hostile work environment exists when a workplace is "permeated with *discriminatory* intimidation, ridicule, and insult . . . sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment") (citation and internal punctuation omitted); *Higgins v. New Balance Athletic Shoe, Inc*., 194 F.3d 252, 258 (1st Cir. 1999) ("The record makes manifest that the appellant toiled in a wretchedly hostile environment.  That is not enough, however, to make his employer liable under Title VII: no claim lies unless the employee presents a plausible legal theory, backed by significantly probative evidence, to show, *inter alia*, that the hostile environment subsisted because of such individual's [protected class].") (citation and internal quotation marks omitted).

In neither of the two phone calls that the plaintiff placed to the RadioShack hotline on July 18, 2007, in which he detailed specific incidents of alleged harassment and unethical conduct, did he complain of disability-based harassment or otherwise intimate that the conduct of which he complained stemmed from such animus.  *See* Defendant's SMF ¶ 24; Plaintiff's Opposing SMF ¶ 24; Plaintiff's Additional SMF ¶ 143; Defendant's Reply SMF ¶ 143.  At his

---

[61] The plaintiff argues that, while the test of whether an employee's work environment was sufficiently intolerable to cause a constructive discharge is an objective one, in weighing how a person in the plaintiff's shoes would respond, the court must take into account the impact of his disability, including the tremendous stress and anxiety that he experiences in response to stressful situations as a result of that condition.  *See* Plaintiff's S/J Opposition at 14 n.4. As the defendant points out, *see* Defendant's S/J Reply at 5 n.4, constructive discharge "cannot be triggered solely by the employee's subjective beliefs, no matter how sincerely held[,]" *Paquin*, 233 F. Supp.2d at 68.

deposition, he attributed the majority of the conduct of which he complains to store policies and/or needs or Moore's economic self-interest, for example, denial of a vacation request, *see* Defendant's SMF ¶ 41; Plaintiff's Opposing SMF ¶ 41; Moore's instruction not to tell customers about various RadioShack discounts and benefits and berating of him for refusing to sell telephones at full price, *see id*. ¶¶ 42-43, 71; Moore's alleged diversion of nearly $1,000 in sales commissions from him, *see id*. ¶¶ 56, 63; Brophy's targeting of him during a loss prevention investigation, *see id*. ¶ 77; and Moore's retraction of his offer of management training, *see id*. ¶ 88.  He presents no evidence that RadioShack, Brophy, or Moore treated him differently than any other sales associate with respect to this conduct.[62]

What is more, although the plaintiff asserts that he received stern verbal and written evaluations and warnings from Moore, *see* Plaintiff's Additional SMF ¶ 110; Ziehm Aff. ¶ 18, he has admitted that both Chisholm and Moore knew that he had Asperger's Syndrome, *see* Defendant's SMF ¶ 12; Plaintiff's Opposing SMF ¶ 12; Ziehm Dep. at 71, the fact that he had Asperger's Syndrome was not a problem with either Chisholm or Moore, *see* Defendant's SMF ¶ 12; Ziehm Dep. at 72, and he was a top salesperson, was never formally disciplined, and received positive performance evaluations, *see* Defendant's SMF ¶¶ 8, 10; Plaintiff's Opposing SMF ¶¶ 8, 10.

In short, apart from evidence that the plaintiff attempted to adduce through his affidavit that I have stricken in response to the defendant's motion to strike, he has adduced no evidence from which a reasonable trier of fact could find that the conduct that he says rendered his

---

[62] To the extent that the plaintiff complains that Stover made an anti-Semitic comment, and Moore did not respond appropriately, Stover's comment, while reprehensible, does not reflect disability-based animus, and the plaintiff admits that (i) he does not know whether Moore did anything in response to his complaint regarding the comment, and (ii) Stover made no such remarks thereafter to the plaintiff or in his presence.  *See* Defendant's SMF ¶¶ 51-52; Plaintiff's Opposing SMF ¶¶ 51-52.  No reasonable inference can be made that Moore failed to respond to the plaintiff's complaint, let alone that any failure of response was predicated on the plaintiff's disability.

working conditions at RadioShack intolerable stemmed from disability-based discriminatory animus.  The defendant accordingly is entitled to summary judgment as to the plaintiff's claim of constructive discharge in violation of the MHRC.

### IV.  Conclusion

For the foregoing reasons, I **GRANT** in part and **DENY** in part the defendant's motion to strike and recommend that the court **GRANT** the defendant's motion for summary judgment.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof.  A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 22nd day of May, 2010.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge

56